# UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF MICHIGAN

**ROSZETTA MARIE MCNEILL**
          **Plaintiff**

**VS.**

**WAYNE COUNTY THIRD CIRCUIT COURT**
**WAYNE COUNTY**
          **Defendant**

Case:2:16-cv-11292
Judge: Hood, Denise Page
MJ: Grand, David R.
Filed: 04-08-2016 At 11:09 AM
CMP ROSZETTA MARIE MCNIELL V WAYNE
COUNTY THIRD CIRCUIT COURT (LG)

| | |
|---|---|
| **Roszetta Marie McNeill**<br>**14610 Faust Avenue**<br>**Detroit, Michigan 48223**<br>**(313) 585-2603** | **Wayne County Third Circuit Court**<br>**2 Woodward Avenue**<br>**Detroit, Michigan 48226**<br>**(313) 224-5260**<br><br>**Wayne County**<br>**500 Griswold Street**<br>**Detroit, Michigan 48226**<br>**(313) 224-5030** |

## SUPERINTENDING CONTROL FOR
## VIOLATION OF 7TH AMENDMENT RIGHT,
## EQUAL PROTECTION, DUE PROCESS AND CIVIL RIGHTS

**NOW COME Plaintiff**, Roszetta Marie McNeill, proceeding in forma pauperis in pursuit of justice on her claim for violation of 7th amendment rights, equal protection, due process and civil rights.

## PARTIES

1. Roszetta Marie McNeill

2. Wayne County Third Circuit Court

3. Wayne County

## BASIS OF JURISDICTION

4. This complaint is filed under U.S.C. § 1331 because the action are such that Plaintiff has no other adequate remedy, especially in state court because of bogus res judicata and bogus permanent

1

injunction for over 9 years violating Plaintiff's 7th amendment rights, equal protection, due process and

civil rights if the federal law providing for equal civil rights  under the Constitution , as described

below.

> (A) **Scope.** A superintending control order enforces the superintending control power of
>
> a court over lower courts or tribunals.
>
> (D) **Jurisdiction.**
>
> > (1) The United States District Court Court have jurisdiction to issue superintending
> > control orders to lower courts or tribunals.
> > (2) The lower court violated of 7th amendment rights, equal protection, due process
> > and civil rights that had devastating effects on Constitution rights U.S.C. § 1331
> > (3) The lower court is named as a party to complaint

5.  That the  U.S.C. § 1331 apply to actions for superintending control of original jurisdiction founded

in violation of Plaintiff's 7th amendment rights, equal protection, due process and civil rights and/or

federal laws providing for equal civil rights and rights under the Constitution.

## PROCEDURAL HISTORY

6. Attached are Exhibits 1-75 to employ a standard of truth (court records)  and  supporting brief,

sufficiently plead and incorporated by reference herein to assert a warrant of federal jurisdiction hereto:

## COUNT I

### SUPERINTENDING CONTROL

7. Plaintiff has been unable to execute her constitutional rights in states court (Wayne County Third

Circuit Court), and her **federal question is** "Can Wayne County Third Circuit Court and Wayne County

violate Plaintiff's 7th amendment rights, equal protection, due process and civil rights  by making it

impossible for Plaintiff  to file in Third Circuit Court because of conspired acts of  Wayne County

Third Circuit Court  and Wayne County to, 1.) alter court records, 2.) agree to a "bogus Res Judicata"

on a case against Wayne County over (9) nine years that had never been litigated, 3.) then, implement

a bogus "permanent injunction," based on the bogus res judicata, which was issued to prejudice

Plaintiff and to violate her 7th amendment rights, equal protection, due process and civil rights. .

8.     The brief will be in aid of the Court's appellate jurisdiction, that exceptional

circumstances warrant the exercise of the Court's discretionary powers, and that

adequate relief cannot be obtained in any other form or from any other court, particularly

Wayne County Third Circuit Court.

9.     The conspired acts and shortcomings of Wayne County Third Circuit Court and Wayne County t

their rejections of the Plaintiff's 7th amendment rights, equal protection, due process and civil rights,

their conspiracy of the bogus res judicata... left the Plaintiff's claims stuck in a neither world of inaction

and rejection by order with no redress that prejudice the Plaintiff with their bogus res judicata and

bogus permanent injunction which is the reason for the request of this court for superintending control.

10.     Superintending control is needed over Wayne County Third Circuit Court abused of its

discretion by granting a "**bogus**" res judicata to Wayne County for over (9) nine years with an

accompanying "**bogus**" permanent injunction rendering fairness and equitability improbable violating

Plaintiff's procedural due process rights under the Constitution and  has so far denied Plaintiff an access

to a forum to hear her complaints, whereas, herein, clearly Plaintiff makes out a prima facie case of

violations and a denial of due process of laws sufficient to warrant the exercise of the court's discretion,

especially, for the reason stated below:

## COUNT II

### CASE # 06-630450-NI
### WAYNE COUNTY  AND  WAYNE COUNTY THIRD CIRCUIT COURT VIOLATED PLAINTIFF'S 7TH  AMENDMENT RIGHTS, EQUAL PROTECTION, DUE PROCESS AND CIVIL RIGHTS  RIGHTS BY ALTERING COURT RECORDS TO PREJUDICE PLAINTIFF

3

11.      The Plaintiff suffered an on-the-job injury 2003 (Exhibit 1) which progressively worsened

2003-2005 (Exhibit 2) accompanied by an on-the-job re-injury, 2006 (Exhibit 3) prompted arthroplastic

surgery to mitigate the initial on-the-job injury, 2003 and re-injury, 2006 on left hand (Exhibit 4) ,

pending surgery on right hand, (Exhibit 5)  the Plaintiff filed in Wayne County Circuit Court, case 06-

630450 NI, 2006, against Juvenile Detention Facility; Wayne County Clerks Office; and County of

Wayne for injury (Exhibit 6).

12.      Upon filing said case Plaintiff named 3Defendants , Juvenile Detention Facility; Wayne County

Clerks Office; and County of Wayne on complaint (Exhibit 6), summons and return of service (Exhibit

7) and it showed 3 (three)Defendants  on register of action. The Defendant  filed a motion arguing that

Plaintiff sued entities that could not be sued (Exhibit 8), and that Wayne County was not named as a

Defendant (Exhibit 8b).

13.      Wayne County Third Circuit Court changed the court records from (3) three Defendants

(Exhibit 6) and (Exhibit 7) to (2) two Defendants  (Exhibit 9) for the sole purpose to conspire with

Wayne County in its efforts to indefinitely prejudice Plaintiff's, 7th amendment, equal protection, due

process, and civil rights.

14.      Wayne County Third Circuit Court granted Wayne County's motion and dismissed case _06-

630450-NI against the (2) Defendants , Wayne County Juvenile Detention Facility and Wayne County

Clerks Office (Exhibit 10).    Plaintiff's complaint was dismissed.

### COUNT III

#### CASE # 07-705759-NI
#### WAYNE COUNTY AND  WAYNE COUNTY THIRD CIRCUIT COURT VIOLATED
#### PLAINTIFF'S 7TH AMENDMENT RIGHTS,  EQUAL PROTECTION, DUE PROCESS AND
#### CIVIL RIGHTS WITH BOGUS RES JUDICATA

15.      With the dismissal of the 2006 case no. 06-630450-NI (Exhibit 10), and as the Plaintiff

recovered from thermoplastic surgery (Exhibit 11), the Defendant , Wayne County, acts of harassment

4

continued to the point were, in 2007 a year later, the Plaintiff was prompt to file 07-705759-NI in

Wayne County Third Circuit Court, naming only (1) one Defendant , Wayne County.

16.     Wayne County continual acts of harassment in 2007,  included such things as  revising Plaintiff

's duties by adding additional duties while Plaintiff was on one are restriction and in full arm cast

(Exhibit 12) and adding to the Plaintiff 's duties (Exhibit 13), the duties of the higher graded staff

(Exhibit 14) creating new duties for Plaintiff which included the additional duties (Exhibit 15) to be

performed which was broken down in percentage and hours that it took Plaintiff to perform new duties

(Exhibit 16). Wayne County initially informed Plaintiff that the cash register aspect of her duties (only

during breaks) were not majority of duties (Exhibit 17), then as a mean to coerce and harass Plaintiff

stated that the additional duties put upon her were comprised mostly of her duties (Exhibit 18) (duties

that she had never performed in her years with Wayne County) and informed AFSCME 1659  that if

Plaintiff could not perform the additional duties along with her regular duties she would not be able to

work and would be escorted out of the building by armed Wayne County Deputies (Exhibit 19), not

withstanding the fact that of the (8) eight employees (Exhibit 20), there were two white account clerks,

(Exhibit 21) who were working as cashiers and who duties were not changed. Plaintiff, an Afro-

American, and only account clerk with restrictions, was the only account clerk working as an account

clerk and the only one whose duties were improperly changed.

17.     Plaintiff "s surgeon, Dr. Chen (Exhibit 22) and Attorney, Juliet Ukume (Exhibit 23) request

Wayne County not to impose additional duties while Plaintiff recovered from surgery.

18.     Wayne County informed AFSCME 1659 that if Plaintiff showed up for work she would be

escorted out, (Exhibit 19), but informed EEOC that Wayne County summon Sheriff Deputies in an

effort to diffuse an escalating situation due to Plaintiff 's erratic behavior (Exhibit 24), then informed

Wayne County Circuit Court that there were no deputies ...and Wayne County wanted the Plaintiff to

leave because she was not medically cleared (Exhibit 25), although Plaintiff was working and Wayne

County add additional duties (Exhibit 14)(Exhibit 15) and (Exhibit 16).

19.     Prior to on-the-job-injuries, the only restrictions that the Plaintiff had was lifting restrictions of 25lbs known and a prerequisite of her employment and qualifications (Exhibit 26), but as a means to harass Plaintiff Wayne County constantly harassed Plaintiff regarding restrictions (Exhibit 27) and would force Plaintiff into improper employment transfers (Exhibit 28) without going through the appropriate procedures or appropriate article of AFSME bargaining union contract whereas temporary transfer were for only (6) six months (Exhibit 29).

20.     The improper transfers were acts of harassment that went from Plaintiff required to lift 0-14 lbs occasionally at Lincoln Hall of Justice cashiers office (Exhibit 30) and Coleman A. Young Municipal Center cashiers office (Exhibit 31), to lifting  0-14 lbs occasionally plus heavy/over 50lbs frequently at Frank Murphy Hall of Justice Bond Office (Exhibit 32)

21.     With the filing of case  07-705759-NI, Plaintiff , via motion, also requested Wayne County Third Circuit Court for temporary restraining order for the harassing acts. Wayne County erroneously argued "Res Judicata"  (Exhibit 32).

22.     Petition is necessary for the reason being that the Plaintiff is unable to file in Third Circuit Court because Wayne County manipulated and coerced Wayne County Third Circuit Court  to agree to a "bogus Res Judicata" on a case against Wayne County that had never been litigated.

23.     Wayne County Third Circuit Court  initially agreed that Plaintiff did not name "Wayne County" and the Defendant's named were "Entities that could not be sued," then, Wayne County manipulated and coerced  Wayne County Third Circuit Court to agree to a "bogus Res Judicata" stipulation that the Wayne County complaint in 2006 had been adjudicated by a competent court and could not be pursued further by the same parties, on issues that had not occurred until 2007. Wayne County  manipulated Third Circuit Court to ordered sanctions on a "bogus Res Judicata" against Plaintiff.

24.     Wayne County Third Circuit Court acted with the sole purpose to conspire with  Wayne County

6

in its bogus "res judicata" and to indefinitely prejudice Plaintiff's, 7th amendment, equal protection, due process, and civil rights.

25.     Plaintiff's complaint against Wayne County was dismissed by Wayne County Third Circuit Court based on 2006 bogus "res judicata."

### COUNT IV

### CASE # 07-724849-NI
### WAYNE COUNTY AND WAYNE COUNTY THIRD CIRCUIT COURT VIOLATED PLAINTIFF'S 7TH AMENDMENT RIGHTS, EQUAL PROTECTION, DUE PROCESS AND CIVIL RIGHTS WITH BOGUS RES JUDICATA

26.     Upon receiving "bogus Res Judicata," Wayne County continued its crusade with carte blanche from the Wayne County Third Circuit Court, to persecute and crucify Plaintiff.

27.     The Plaintiff filed 07-724849-NI when the Plaintiff, who had tested into every position with Wayne County (Exhibit 34), was refused the position of court clerk in 2007 after passing the court clerk examination and scheduled for the (5) five minute interview (Exhibit 35).

28.     Of the over 35 candidates taking the court clerk examination with Plaintiff, the Plaintiff was the first to complete the test at 10:28 am (Exhibit 35), scored the highest and the only one with previous experience (Exhibit 36). An employee that had failed the test, with no previous experience was given a sub-test to qualify her for the position of court clerk.

29.     The same day that Wayne County was informed that Plaintiff had passed the court clerk test, (Exhibit 35) Wayne County fired Plaintiff on the pretext of violation of Wayne County policy (Exhibit 38). Plaintiff's immediate supervisor stated under oath that Plaintiff had not done anything that all the other employee had done (Exhibit 39)

30.     With the filing of case 07-724849-NI  Wayne County Third Circuit Court allowed Wayne County to erroneously argued the 2006 bogus"Res Judicata"  (Exhibit 40).

31.     Petition is necessary for the reason being that the Plaintiff is unable to file in Third Circuit Court

because Wayne County manipulated and coerced Wayne County Third Circuit Court  to agree to a

"bogus Res Judicata" on a case against Wayne County that had never been litigated. Wayne County

manipulated Third Circuit Court to ordered sanctions on a "bogus Res Judicata" against Plaintiff.

32.      Wayne County Third Circuit Court acted with the sole purpose to conspire with  Wayne County

in its bogus "res judicata" and to indefinitely prejudice Plaintiff's, 7th amendment, equal protection, due

process, and civil rights.

33.      Plaintiff's complaint against Wayne County was dismissed by Wayne County Third Circuit

Court based on 2006 bogus "res judicata."

## COUNT V

### CASE # 08-106240-CZ
### WAYNE COUNTY AND  WAYNE COUNTY THIRD CIRCUIT COURT VIOLATED PLAINTIFF'S 7TH  AMENDMENT RIGHTS, EQUAL PROTECTION, DUE PROCESS AND CIVIL RIGHTS  WITH BOGUS RES JUDICATA

34.      Since filing the initial 2006 case no. 06-630450 Wayne County forced Plaintiff into injurious

position forcing Plaintiff off work for sick and no pay on an average of 700 days per year over 3 years

(Exhibit 41) which forced the Plaintiff into bankruptcy (Exhibit 42) and the Plaintiff filed case _08-

106240-CZ.

35.      Wayne County manipulated and coerced Wayne County Third Circuit Court  to agree to a

"bogus Res Judicata" on a case against Wayne County that had never been litigated, and received order

and judgment for permanent injunction on the bogus "Res Judicata (Exhibit 43).

36. ·      Wayne County  manipulated Third Circuit Court to ordered sanctions on a "bogus Res Judicata"

against Plaintiff. Third Circuit Court  ordered permanent injunction on a "bogus Res Judicata" against

Plaintiff in the form of $15,000.00 bond.

37.      Wayne County attempted to manipulated and coerced  Wayne County Third Circuit Court to

agree to a permanent junction on the bogus "Res Judicata" in Wayne County and any other court.

8

Wayne County Third Circuit Court only ordered permanent junction for Wayne County court (Exhibit 43)

38.     Wayne County Third Circuit Court acted with the sole purpose to conspire with Wayne County in its bogus "res judicata" and to indefinitely prejudice Plaintiff's, 7th amendment, equal protection, due process, and civil rights.

39.     Plaintiff's complaint against Wayne County was dismissed by Wayne County Third Circuit Court based on bogus permanent injunction which was ordered based on 2006 bogus "res judicata."

### COUNT VI

### CASE # 08-018649-CZ
### WAYNE COUNTY AND WAYNE COUNTY THIRD CIRCUIT COURT VIOLATED PLAINTIFF'S 7TH AMENDMENT RIGHTS, EQUAL PROTECTION, DUE PROCESS AND CIVIL RIGHTS WITH BOGUS RES JUDICATA

40.     Upon receiving bogus permanent injunction order from Wayne County Third Circuit Court , Wayne County continued its crusade with carte blanche from the Wayne County Third Circuit Court, to persecute and crucify Plaintiff.

41.     Upon wrongfully terminating Plaintiff, Wayne County and Wayne County Third Circuit Court sold the Plaintiff's home (Exhibit 44).

42.     Wayne county argued the bogus permanent restraining order ill-gained from the bogus "res judicata" requesting sanctions on the bogus "permanent restraining order" and bogus "res judicata." (Exhibit 45)

**43.**     Wayne County Third Circuit Court acted with the sole purpose to conspire with Wayne County in its bogus "res judicata" and to indefinitely prejudice Plaintiff's, 7th amendment, equal protection, due process, and civil rights.

### COUNT VII

### CASE # 09-023077-CZ
### WAYNE COUNTY AND WAYNE COUNTY THIRD CIRCUIT COURT VIOLATED

9

## PLAINTIFF'S 7TH AMENDMENT RIGHTS, EQUAL PROTECTION, DUE PROCESS AND CIVIL RIGHTS WITH BOGUS RES JUDICATA

44.     January 2009, Plaintiff filed 09-023077-CZ after Arbitrator, Barry Goldman, who cautioned Wayne County on its improper employment practices, returned Plaintiff to employment (Exhibit 46) and Wayne County refused Plaintiff's promotion, (5) five minute in-basket interview (Exhibit 35), and returned the Plaintiff to the injurious post at FMHJ (Exhibit 47). In its acts of harassment and retaliation, Wayne County returned Plaintiff to FMHJ location without her lifting restrictions in an attempt to force the Plaintiff to quit, totally disregarded Plaintiff's lifting restriction of 25 lbs (Exhibit 26) and forcing her to lift 50lbs or more (Exhibit 32).

45.     April, 2009, Plaintiff suffered on-the-job-injury and on-the-job-re-injury (Exhibit 48) which caused her condition of Lupus to be exasperated (Exhibit 26), medical treatment (Exhibit 49), and carpal tunnel of the right hand (Exhibit 50) in which Plaintiff file worker's compensation (Exhibit 51).

46.     Plaintiff's physician filed FMLA Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654 for Plaintiff May, 2009 (Exhibit 52) and submitted it to Wayne County. June, 2009, Plaintiff's physician filed a clarification of FMLA Medical Certification and submitted to Wayne County (Exhibit 53)

47.     On the request form, Plaintiff's doctor explained that Plaintiff was suffering from sciatic back injury. July, 2009, Plaintiff filed for an extension of her FMLA for continual therapy. Wayne County demand Plaintiff's physician to complete a "Request for Clarification of FMLA Medical Certification."On the "Request for Clarification of FMLA Medical Certification," Plaintiff's physician stated restrictions of bending and restrictions of lifting more than 10lbs. (Exhibit 53)

48.     November 4, 2009, Wayne County requested Plaintiff to return to work by November 30, 2009 or she would be terminated. (Exhibit 54). Plaintiff's physician returned Plaintiff to employment with back brace (Exhibit 55).

10

49. November 13, 2009, Wayne County refused to allow Plaintiff to return to work and while Plaintiff was waiting in Wayne County personnel at CAYMC to be returned to employment, Wayne County hand delivered to Plaintiff a typed memo demanding that Plaintiff have her physician file a FMLA in 15 days over the **THANKSGIVING HOLIDAY** no mention that if it is not returned within 15 days she would be terminated (Exhibit 56).

50. In accordance to FMLA if a FMLA package is not returned in a timely manner, it will simple be denied (Exhibit 57) and additional time, in accordance to "the rights and responsibilities for taking FMLA leave," (Exhibit 57b) or contractual leave.

51. The FMLA package the Plaintiff received, not only during the time that the Plaintiff's Doctor's office was closed for the **THANKSGIVING HOLIDAY**, it was received during the time that the Defendants were also closed for the **THANKSGIVING HOLIDAY** contained 1.) leave of absence request, 2.) authorization for release, 3.) notice of eligibility, and 4.) certification of health care provider.

52. Wayne County demanded that Plaintiff have her doctor complete FMLA package in two weeks (over **THANKSGIVING HOLIDAY**) , as a prerequisite of Plaintiff returning to work knowing that **ALL** of AMERICA, THUS, THE WORLD, was closed for **THANKSGIVING HOLIDAY**. (Exhibit 56)[1]

53. December 4, 2009, Wayne County erroneous accuse the Plaintiff of AWOL (Exhibit 58) in accordance to rule 16.06 C(3), because the FMLA package was not submitted by November 30, 2009 (Exhibit 56) and instead submitted (4) days later when Plaintiff's physician returned from **THANKSGIVING HOLIDAY.** The Plaintiff's physician informed Wayne County that the paper work

---

[1] November 13, 2009, the Wayne County refused the Plaintiff employment. When the Plaintiff arrived at the job site, Wayne County personally handed, to the Plaintiff, a memo refusing her employment until her physician backdated a FMLA package. On the bottom of November 13, 2009 memo, the Wayne County stated *** Forms picked up by MS. McNeill on Nov. 1Vov.3, 2009... (Exhibit 56)

was in the office over the **THANKSGIVING HOLIDAY** (office was closed) (Exhibit 59).

54.     In United States District Court case no. 13-1271, Wayne County received summary judgment in Plaintiff's ADA case on the premise that Wayne County accommodated Plaintiff and Wayne County "regarded" Plaintiff as disabled (Exhibit 60). Accommodations are on-going and (4) days were a reasonable accommodation causing Wayne County no hardship.

55.     Furthermore, Wayne County terminated Plaintiff in accordance to 16.06(C)(3), AWOL, (5) five business days no show no call (Exhibit 61) Plaintiff's telephone records proved that the Plaintiff was in constant communication with Wayne County (Exhibit 62), informing Wayne County that her physician was not available, because of the Thanksgiving Holiday (Exhibit 59).

56.     Wayne County succeeded in forcing Plaintiff to accept termination by denying her reasonable accommodation for her disabilities. Sulima 625 F.3d at 5ed. Wayne County denied Plaintiff 's request for four day medical extension (from November 30-December 4). (Exhibit 59) The Wayne County 's ground for terminating Plaintiff was Plaintiff 's refusal to return from "medical leave" (i.e.,"refusal to have physician complete FMLA medical documents) [2]

57.     29 CFR 825.305(b) states ..The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, **unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good-faith efforts.** 29 CFR 825.305(d) states that at **the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification.**

**58.**     29 CFR 825.313(b) states that the employee must provide the requested certification to the

---

[2] In her complaint, Plaintiff claimed Wayne County 's acts violated 42 U.S.C. § 2000e-5 *et seq.* (part of Title VII of the Civil Rights Act of 1964) and 42 U.S.C. § 12101 *et seq.* (the ADA). Plaintiff alleges that she was retaliated against for filing a complaint of *disability* discrimination,and her retaliation claim under the ADA, namely 42 U.S.C. § 12203(a).

employer within 15 calendar days after the employer's request, **unless** not practicable due to extenuating circumstances. Last, but not least, 29 CFR 825.313(c) states that an employee must provide re-certification within the time requested by the employer (which must allow at least 15 calendar days after the request) or as soon as practicable under the particular facts and circumstances.

59.     December 3, 2009, Wayne County wrongfully terminated Plaintiff (Exhibit 58), because Plaintiff's Doctor did not return FMLA until December 4, 2009, instead of November 30, 2009 **(THANKSGIVING HOLIDAY)**.

60.     Plaintiff filed a Motion to "Stay Proceeding Without Bond. Wayne County argued the bogus permanent restraining order ill-gained from the bogus "res judicata" and the Plaintiff's motion was dismissed (Exhibit 63)

61.     Wayne County violated Plaintiffs 7th amendment rights, equal protection, due process and civil rights arguing bogus res judicata from 2006 until date (Exhibit 64).

**62.**     Wayne County violated Plaintiffs 7th amendment rights, equal protection, due process and civil rights used bogus res judicata to prejudice other courts against Plaintiff from 2006 until date (Exhibit 65) and (Exhibit 66). In 2009 Wayne County argued for protection based on the bogus Res Judicata. (Exhibit 65) and Michigan Court of Appeals prejudiced the Plaintiff based on the bogus "res judicata" and bogus permanent injunction (Exhibit 66).

63.     Wayne County and Wayne County Third Circuit Court violated Plaintiffs 7th amendment rights, equal protection, due process and civil rights by harassing Plaintiff from 2001 until 2009 with no redress because of bogus "res judicata and bogus "permanent injunction (Exhibit 67) .

64.     Wayne County and Wayne County Third Circuit Court violated Plaintiffs 7th amendment rights, equal protection, due process and civil rights when illegally terminated Plaintiff from 2001 until 2009 and no redress because of bogus res judicata and bogus "permanent injunction (Exhibit 68).

65.     Wayne County improper employment procedures were reversed by arbitration (Exhibit 46)

13

and (Exhibit 46b) but the Plaintiff had no redress in Wayne County Third Circuit Court because of bogus res judicata and "permanent injunction"

66.    Wayne County harassed Plaintiff, in lieu of Wayne County records that Plaintiff always performed her job (Exhibit 69) and received commendations for her performances (Exhibit 70) with no redress in Wayne County Third Circuit Court because of bogus res judicata and bogus "permanent injunction"

67.    Wayne County personnel were the conspirators that harassed Plaintiff, lead by Corporation Counsel, all of whom **"NEVER"** worked with her directly (Exhibit 71)

68.    The Plaintiff testified under oath that she only wanted to perform her job, but Wayne county prevented her (Exhibit 72), causing the Plaintiff numerous on-the-job mental injuries (Exhibit 73), numerous on-the-job physical injuries (Exhibit 74)

69.    Wayne County Third Circuit Court acted with the sole purpose to conspire with Wayne County in its bogus "res judicata" and to indefinitely prejudice Plaintiff's, 7th amendment, equal protection, due process, and civil rights.

70.    Wayne County and Wayne County Third Circuit Court acts violated Plaintiffs 7th amendment rights, equal protection, due process and civil rights with bogus res judicata and bogus "res judicata" leaving the Plaintiff disabled, injured, in need of surgery, in pain and destitute (Exhibit 75).

71.    After Wayne County manipulated and coerced Wayne County Third Circuit Court to agree to a "bogus Res Judicata and sanctions of $15,000 to file against Wayne County, Plaintiff was once again injured and terminated which made it impossible for her to acquire $15,000 to file against the bogus permanent injunction.

## COUNT VIII

## PREEMPTIVE ORDER

72.    Ordinarily state court would have general jurisdiction, but, in this stead, State court's such

14

jurisdiction is specifically prohibited: state court is named as a Defendant who denied and/or cannot enforce in the courts of State Plaintiff's constitution and civil rights in which it itself abridged, under any law providing for the equal civil rights of citizens of the United States,

74.     The State Court, acting under color of authority, was more than inconsistent with laws derived for providing for equal rights. Wayne County Third Circuit Court and Wayne County's actions have unlawfully prevented Plaintiff from the protection from harm intended by the Constitution.

75.     A genuine and present controversy involving violation of Plaintiff's 7th amendment rights, equal protection, due process and civil rights in federal law providing for equal civil rights.

76.     Wayne County's actions have unlawfully prevented Plaintiff from protection from harm intended by 7the Amendment, due process, equal protection and Civil rights, whereas, the Plaintiff has made a substantial showing of the denial of the Plaintiff's constitution rights.

77.     Plaintiff needs this court to order the Wayne County Third Circuit Court accept the case and complaints against Wayne County since "bogus" Res Judicata and violations of Plaintiff's 7 amendment right, due process, equal protection and civil rights. .

78.     Clearly the Wayne County Third Circuit Court is not the required fair and impartial forum, and cannot be expected to decide the issues that were raised by the Plaintiff in a manner that would be consistent with due process.

79.     As shown in Count I-VIII of Plaintiff's supporting brief, Plaintiff needs this court to order Wayne County Third Circuit Court to accept the Plaintiff's case against Wayne County thereto, and enter its own order that prevents Wayne County from interfering with due process until further order of this court.

## **REQUESTED RELIEF**

     **WHEREFORE,** Plaintiff, Roszetta Marie McNeill, prays for the entry of an order of

superintending control accordingly that directs and Wayne County Third Circuit Court Wayne County to:

   A. Accept such Complaint against Wayne County as a contested case dismissing the bogus Res Judicata and the bogus permanent injunction.

   B. Wayne County Third Circuit Court Assign a Wayne County Circuit Court Judge, (other than Micheal Sapala) to the case who certifies that he/she will be fair and neutral, and not prejudge the issues raised in First Complaint against Wayne County. In addition, to hold a timely hearing on same, and issue findings of fact and conclusion of law, to be forwarded to this court for the issuance of a final order consistent with the provisions of the Constitution.

   C. Wayne County Third Circuit Court Accept preemptive order from this court that orders Wayne County Third Circuit Court to accept the complaint without requiring Plaintiff to post security.

   D. Enter such further and other relief as this court deems appropriate under the circumstances, or in the alternative.

   E. Direct the parties on how to proceed as the court deems appropriate under the circumstances.

April 8, 2016

                              Respectfully submitted


                              _____
                              ROSZETTA MARIE MCNEILL
                              14610 Faust Avenue
                              Detroit, Michigan 48223
                              (313) 585-2603

# EXHIBIT 1

2151 East Jefferson Avenue Detroit, MI 48207
Phone: (313) 259-7990   Fax: (313) 259-7294

Service Date: 10/27/20
Case Date:     10/19/20

## Activity Status Report

Patient:  McNeill, Roszetta M.
SN:        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
Address: 30183 Liberty
            INKSTER, MI 48141
Home:     (313) 728-1974
Work:                      Ext.:

Employer Location: Wayne Co-Juvenile
Address:           600 Randolph 5th Floor
                   DETROIT, MI 48226
Auth. by:          C Dennis

Contact: Rechelle Burnett
Role:    Injury Contact
Phone:   (313) 967-3669 Ext.:
Fax:     (313) 224-7419

**This Visit:**  Time In: 01:20 pm        Time Out: 03:32 pm

Treating Provider:  Lakshminarayana Shankarkrishnan, PT

Recordable: Yes        Visit Type: Recheck

Diagnosis: 924.11   Contusion Of Knee
           923.20   Contusion Of Hand(S)

Medications:
- ☐ Dispensed Prescription Medication to Patient
- ☐ Dispensed Over-The-Counter Prescription
- ☐ Written Prescription given to Patient

**Patient Status:**  Provider prescribed restrictions and activity status remain in effect until the next Provider visit.

Remarks:

**Employer Notice:**  The prescribed activity recommendations are suggested guidelines to assist in the patient's treatment and rehabilitation. Your employee has been informed that the activity prescription is expected to be followed at work and away from work.

Anticipated Date of Maximum Medical Improvement:

**Next Visit(s):**  **Patient Notice:**  It is essential to your recovery that you keep your scheduled appointments, but should you need to reschedule or cancel your appointment, please contact the clinic. Thank you for your cooperation.

Actual Date of Maximum Medical Improvement:

Visit Date:        Monday October 27, 2003   3:45 pm
Provider/Facility: Sharon R. Sneed, MD

Visit Date:        Wednesday October 29, 2003   2:00 pm
Provider/Facility: Lakshminarayana Shankarkrishnan, PT

helle Burnett - 5551388.TXT

```
================================================================
===
Injury Activity Status Report for Roszetta McNeill
================================================================
===
CONCENTRA MEDICAL CENTERS (MI)
2151 EAST JEFFERSON AVENUE
DETROIT, MI 48207
PHONE: (313) 259-7990
FAX:  (313) 259-7294

CLAIM NUMBER:        CASE ID:        CASE DATE:
  (NONE)              222161314       10/19/2003

                 SERVICE ID:     SERVICE DATE:
                  223790631       10/27/2003

PATIENT:
  MCNEILL, ROSZETTA M.
  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
  30183 LIBERTY
  INKSTER, MI 48141
  H-PHONE: (313) 728-1974

EMPLOYER:
  WAYNE CO-JUVENILE
  600 RANDOLPH 5TH FLOOR
  DETROIT, MI 48226
  AUTH BY: C DENNIS

CONTACT:
  RECHELLE BURNETT
  INJURY CONTACT
  PHONE: (313) 967-3669
  FAX:  (313) 224-7419

THIS VISIT:
  SIGN IN:   1:20 PM
  CHECK IN:  1:22 PM
  CHECK OUT: 3:32 PM
  RECORDABLE: YES
  VISIT TYPE: RECHECK

  TREATING PROVIDER:
    LAKSHMINARAYANA SHANKARKRISHNAN, PT
```

# NOTICE OF COMPENSATION PAYMENTS

Michigan Department of Consumer & Industry Services
Bureau of Workers' Disability Compensation
P.O. Box 30016, Lansing, MI 48909

FILING # 01

**PART A**

| 1. Social Security Number | 2. Date of Injury | 3. Employee Name (Last, First, MI) | | 4. Date of Birth | 5. Date of Death |
|---|---|---|---|---|---|
| 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 | 10/19/2003 | MCNEILL | ROSZETTA | 04/14/1960 | |
| 6. Employee Street Address | | | 7. City | 8. State | 9. Zip Code |
| 30183 LIBERTY | | | INKSTER | MI | 48141 |
| 5. Employer Name | | | | 11. Federal ID Number | 12. Injury Location Code |
| WAYNE COUNTY | | | | 386004895 | P204287 |
| 5. Employer Street Address | | | 14. City | 15. State | 16. Zip Code |
| 600 RANDOLPH 5TH FLOOR | | | DETROIT | MI | 48226 |
| 7. Carrier or Self-Insured Name | | | | 18. NAIC or Self-Insured Number | |
| Wayne County | | | | 99900082 | |
| 9. Service Company/TPA Name (if applicable) | | | | 20. Service Company/TPA ID Number | |
| Accident Fund Insurance Company of America | | | | A74 | |
| 21. Zip Code of Issuing Office | 22. Carrier or Self-Insured Claim Number | | 23. Date Carrier Received Notice of Injury | | 24. Date First Payment Made |
| 48901 | 6340360 WC03000488 001 | | 10/27/2003 | | 11/03/2003 |

**PART B**

| 25. Nature of Injury | | 26. Part of Body | |
|---|---|---|---|
| Multiple Physical Injuries Only | | Multiple Body Parts | |
| 27. Average Weekly Wage | 28. Discontinued Fringes | 29. Second Employer A.W.W. | 30. Second Employer Discontinued Fringes |
| 741.41 | $ | $ | $ |
| 31. Tax Filing Status on Date of Injury  A | 32. Last Day Worked 10/19/2003 | 33. Number of Days in Work Week  7 | 34. Number of Dependents  0 |

**PART C**

| 35. Reason For Filing      D | 36. Weekly Compensation Base Rate  $432.45 |
|---|---|

37. Weekly Adjustments to Base Rate

| $_____ | $_____ | $_____ | $_____ |
|---|---|---|---|
| $_____ | $_____ | $_____ | $_____ |

38. Weekly Amount Being Reimbursed by a Fund (Not reported in line 37)

| $_____ | $_____ | $_____ |
|---|---|---|

**PART D**

| BASIS OF PAYMENT | BENEFIT TYPE | SPECIAL PAYMENT | TOTAL WEEKLY RATE | FROM | THROUGH | TOTAL AMOUNT PAID | YEAR PAID | TERMINATE REASON |
|---|---|---|---|---|---|---|---|---|
| A | A | | 432.45 | 10/27/2003 | 10/31/2003 | 308.89 | 2003 | A |

• BASIS OF PAYMENT IS OTHER THAN "A" (VOLUNTARY PAYMENT) OR LINE 37 IS EQUAL TO "J" OR "K", ENTER ORDER #_____

• BENEFIT TYPE IS "C" (SPECIFIC LOSS), ENTER NUMBER OF WEEKS _____ AND EFFECTIVE DATE OF LOSS ___/___/___

• ANY FILING CODES ON THIS FORM REPRESENT "OTHER", PLEASE BE SPECIFIC _____

| ...ting a false or fraudulent statement for the purpose of ...taining or denying benefits can result in criminal or civil prosecution, or both, and denial of benefits. | Authority: Workers' Disability Compensation Act, 408.31 (6a-d) Completion: Mandatory Penalty: Workers' Disability Compensation Act, 418.631; 418.8( |
|---|---|

THIS IS TO CERTIFY THAT A COPY OF THIS FORM HAS BEEN MAILED AND GIVEN TO THE EMPLOYEE

| | 41. Telephone Number | 42. Date |

# EXHIBIT 2

**Sinai-Grace University Physicians**
Lahser Center
27209 Lahser, Suite #120
Southfield, MI 48034
Phone 248-358-4892
Fax 248-358-5125

NAME _Roszetta McNeill_ DATE _6/3/05_

ADDRESS _____

℞    TO WHOM IT MAY CONCERN,

MS MCNEILL SHOULD WEAR A ℞

HAND/WRIST SPLINT TO HELP WITH

PAIN IN HE THUMB/WRIST/PALM.

Refill _____ Times       _M. F. Edwards_ _____ M.D.

DEA No. _____

# EXHIBIT 3

# Injury Activity Status Report

================================================

CONCENTRA MEDICAL CENTERS (MI)
151 EAST JEFFERSON AVENUE
DETROIT, MI  48207
PHONE: (313) 259-7990
FAX:    (313) 259-7294

CLAIM NUMBER:
  (NONE)

CASE ID:
  222991957

CASE DATE:
  08/03/2006

SERVICE ID:
  225216079

SERVICE DATE:
  08/07/2006

PATIENT:
  MCNEILL, ROSZETTA M.
  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
  30183 LIBERTY
  INKSTER, MI  48141
  H-PHONE: (313) 728-1974

EMPLOYER:
  WAYNE CO-JUVENILE
  300 RANDOLPH 5TH FLOOR
  DETROIT, MI  48226
  AUTH BY: MR. POWELL

CONTACT:
  RECHELLE BURNETT
  INJURY CONTACT
  PHONE: (313) 967-3669
  FAX:   (313) 224-7419

THIS VISIT:
  SIGN IN:     8:42 AM
  CHECK IN:    9:03 AM
  CHECK OUT: 10:21 AM
  RECORDABLE: NO
  VISIT TYPE: NEW

TREATING PROVIDER:
    DANIEL L. FINK, MD

Workers' Compensation Agency/Board of Magistrates
P O Box 30016, Lansing, MI 48909

102306 003

Plaintiff's Social Security Number: **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**    Plaintiff's Name(s): **Rosetta McNeill**

Defendants(s)/Carrier(s)

A. **County of Wayne - Self Insured**

B.                                                    MAILED

C.                                                    OCT 2 3 2006

D.                                          WORKERS' COMPENSATION AGENCY
                                            LANSING, MICHIGAN

Type of Claim (For statistical purposes only – not a part of this order)

| A. ☐ General Disability | B. ☐ Partial Wage Loss | C. ☐ Specific Loss | D. ☐ Permanent Total | E. ☐ Death | F. ☐ Misc. |

Type of Award (For statistical purposes only – not a part of this order)

| ☐ Granted Open | 4. ☐ Medical Only | 7. ☐ Stipulated Open | 10. ☒ Dismissed | 13. ☐ Granted Pet. to Stop | 16. ☐ Voc. Rehab Review |
| ☐ Granted Closed | 5. ☐ Voluntary Pay | 8. ☐ Stipulated Closed | 11. ☐ Granted Penalty | 14. ☐ Denied Pet. to Stop | 17. ☐ Atty. Fee Resolved |
| ☐ Denied | 6. ☐ Voluntary Pay - 115 | 9. ☐ Withdrawn | 12. ☐ Denied Penalty | 15. ☐ Health Care Resolved | 18. ☐ Other |

| Injury Date(s) Established | Average Weekly Wage | Discontinued Fringes | Date Discontinued |
|---|---|---|---|
| | $ | $ | |
| | $ | $ | |

Filing Status: | A. ☐ Single | B. ☐ Single/Head of Household | C. ☐ Married/Joint | D. ☐ Married/Separate |

Dependents - Date of Marriage/Birth

| Name | Date | Name | Date | Name | Date |
|---|---|---|---|---|---|
| | | | | | |

IT IS FOUND that the employee is disabled and compensation shall be paid as follows:

| Injury Date(s) | Average Weekly Rate | From | Through |
|---|---|---|---|
| | $ | | |
| | $ | | |
| | $ | | |

IT IS FURTHER FOUND that the employee is still disabled and therefore it is ordered that defendant/carrier _____ shall pay compensation at the rate of $_____ per week, until further order. Interest is owed in accordance with Section 801(6) from date each payment was due until paid.

IT IS FURTHER ORDERED that defendant/carrier _____ shall be responsible for medical expense(s) pursuant to Section 315 as follows:

IT IS FURTHER ORDERED that the maximum authorized attorney fee shall not exceed _____ percent of the compensation accrued (subject to the provisions of Section 858 (418.858) and Rule 14, R408.44).

IT IS FURTHER ORDERED that: the plaintiff's application for hearing is dismissed for lack of progress because the plaintiff failed to appear on the scheduled trial date.

RECEIVED

OCT 1 8 2006

WORKERS' COMPENSATION AGENCY
LANSING, MICHIGAN

Joy Turner (228G), Magistrate

_____ on    October 12, 2006    at Detroit, _____ Michigan

If a Claim for Review is filed by either party within 30 days from the date stamped on this Opinion/Order as "Mailed Date," this order shall become final. The Claim for Review should be filed with the Workers' Compensation Appellate Commission, P O Box 30016, Lansing MI 48909.

(Rev. 12/03)    Authority: Workers' Disability Compensation Act 418.847(2), R418.54(1). Completion: Mandatory.

# Transcription

| Patient: | McNeil, Roszetta M. | Service Date: | 8/7/2006 |
|---|---|---|---|
| Soc. Sec. #: | 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 | Injury Date: | 8/3/2006 |
| Date of Birth: | 4/14/1960  Age: 46 | Employer: | Wayne Co-Juvenile |
| Service Location: | CMC - Det Jefferson | Dictated By: | Daniel Fink, M.D. |
| Service ID # : | 225216079 | Diagnosis: | 844.0   Lateral Collateral Ligament of Knee Stra |

Notes:

FIRST INJURY REPORT

REPORT TO THE ATTENTION: Wayne County Risk Management, attention Rechelle Burnett

DATE OF INCIDENT: 08/03/06

Dear Ms. Burnett:

The following is a first injury report on your employee, Ms. Rosetta McNeil. Ms. McNeil first presented to the Jefferson Branch of Concentra Medical Center for her current complaints on Monday, 08/07/06, stating that she was suffering from a minor back pain and right knee pain. According to her history which was extremely long and records which she brought us which were voluminous she had chronic problems involving her right knee, both hands and some lower back symptoms. She did bring us reports from prior treatment at the Jefferson Branch of Concentra Medical Center which dated back to 10/19/2003. A detailed review of these records indicated that she had suffered a bump and twist to her right knee which was treated as a contusion. Her initial evaluation was 10/20/03. At that time she stated that she was managed resident in a detention facility and hit her right knee and right toe on a cement bed and twisted her knee and went to the residence room and complained of thumb swelling. She was treated both by Dr. Brockington a medical specialist at this facility and also a physical therapist. It was a minor injury which was anticipated to resolve within a few days. The patient did, however, give a history of having a nonoccupational systemic lupus erythematosus which was a reason for a minor injury to persist. Ms. McNeil states that after she did leave our clinic she did follow up treatment at Sinai Grace Hospital in Southfield, Michigan and was also treated by Henry Ford Hospital for ongoing complaints regarding multiple joints including shoulder, back, neck, right knee. She has maintained treatment with outside physicians up to and including her current injury.

The patient also brings with her information that she has recently seen her own doctor at Henry Ford, Dr. Martin, for right knee patellofemoral syndrome. She brings us a note indicating this is a subacute, i.e. 1 to 5-month-old problem and that doctor saw her on 07/24/06 and ordered physical therapy for her right knee. This preceded her incident which occurred on 08/03/06 for which she stated that she had been changed in job occupational duties from her prior detention specialist back to a former job duty where she previously worked as a clerk in the Sheriff's Department. She states that this has been her job since her 2003 injury due to

**Dictated But Not Read**
Dictated On: 8/7/2006 5:26 PM

**Dictated By: Daniel Fink, M.D.**

**From:** Debra Gibson
**To:** Burnett, Rechelle
**Date:** 8/17/2006 3:15:15 PM
**Subject:** Fwd: Re: Roszetta McNeil FMLA Intermittent request

Hi Rechelle,

Just a note to confirm Ms. McNeil's release from Job Injury as of 8/10/06. Also, I am faxing over her leave request for your records because she has indicated LTD/Workers Compensation in addition to Personal illness as her reason for leave request.

As stated in the attached message, her leave request is being denied due to the information presented by her physicians, as well as her ineligibility for an Intermittent FMLA.

Debra C. Gibson
Personnel Officer
Office of the Wayne County Clerk
Ph.: (313) 224-0242
Fx.: (313) 224-5364


**CC:** Johnson, Johnnie

# EXHIBIT 4

813

Henry Ford Health System     Office Note

Patient Name: MCNEIL, ROSZETTA   MRN: 179-31-53-9   Birth Date: 04/14/1960 (46 years)   Sex: Female   Room/Bed:
PCP: Unassigned   PP: Unassigned   HRM Primary Insurance: BLUE CROSS    Current Chart: PIQUETTE STORAGE MEDICAL RECORDS   Prir

Report: 08/29/2006 00:00   Received: 08/31/2006 11:11    Original Document   Document Status:
Reviewed
Reviewed by: VILLAREAL, CHERYL, (22302) On: 08/31/2006 11:11

# Henry Ford Hospital and Medical Centers
## Office Note

Patient Name: MCNEILL, ROSZETTA      MRN: 179-31-53-9
Care Provider Name: Villareal, Cheryl    Care Provider Code: 22302
Site: 15 HF Detroit Campus Clinic     Dept: 32 Plastic Surgery K-16
Date of Service: 08/29/2006 00:00     Note Type: DOFNT

PATIENT'S DOB/AGE: 04/14/1960 (46 years)    SEX: female

Encounter Code 716.94

This is a 46 yo female with a history of lupus and thrombocytopenia referred by Dr. Feldman for
bilateral thumb pain. Patient states that the pain has been ongoing for 3 years. She states that
three years ago she worked in the corrections division for juveniles. While attempting to
restrain a juvenile, the girl bent the patient's thumbs backward to release her grip. The
patient recovered from the incident, no work up was done, but has since then had pain over
bilateral thumbs. She states that she now works in accounting, and has severe pain when counting
money. She presented to the emergency room on 6/2/06 with severe pain and swelling of the left
thumb. She was diagnosed with osteoarthritis of the 1st CMC joint. She states that the swelling
has reduced somewhat but is still greater on the left than right. She can no longer get through
a day of work without severe pain.

ROS: Patient denies fever, chills, chest pain, shortness of breath, nausea, vomiting diarrhea,
weakness, dizziness, headache, skin rash, pain in any other extremity, dysuria, all other
systems negative other than HPI.

PMH: Lupus, thrombocytopenia
PSH: none
Meds: Baclofen
ALlergies: ASPIRIN
Social: she quit smoking 2 months ago, denies alcohol and drugs, Works as an accountant at Wayne
County

PE: Well developed, well nourished female, in no acute distress, alert and oriented X3.
Examination of her hands reveals swelling over the left thenar eminence when compared to the
right. She has tenderness over bilateral CMC joint with +CMC grind on the left. Tinels,
finkelsteins, and phalens is negative bilaterally. Sensation is intact. Pulses are +2 with good
capillary refill.

Xray: xray of the left hand from the ER visit shows severe DJD of 1st CMC joint.

A. 1st CMC osteoarthritis

P. Patient was seen with Dr. Darian. Findings and options were reviewed with the patient. She
was told that she may need operative intervention for this problem. She was also informed that
she may need to choose another occupation without repetitive movements of her hands. She is
being referred to Dr. Chen who specializes in hand surgery within this clinic. We will get an
xray of her right hand as well before her next visit.

814

02-23-'09 16:26 FROM-                                                    T-219  P019/030 F-227

Operative Note

Name: MCNEILL, ROSZETTA  MRN: 179-31-53-9  Birth Date: 04/14/1960 (47 years)  Sex: Female  Room/Bed:
CP: Unassigned  PP: Unassigned  HFH Primary Insurance: BLUE CROSS      Current Chart: PIQUETTE STORAGE MEDICAL RECORDS  Prin

Import: 10/02/2006 00:00    Received: 10/05/2006 16:20    Revision 1 of 1  Document Status:
K   ad
Ic. _ Type: Operative Note
Care Provider: ELLIS, JENNIFER      Clinic: HF DETROIT CAMPUS CLINIC, OPERATI
Transcribed By: S70/MEDLINE TRANSCRI  Updated By: CHEN, ANDREW
Electronically signed by: CHEN, ANDREW,MD (50700) On: 10/05/2006 16:20

Company: HF                             MRN: 17931539
PROV. CODE: 21956                      Pt Name: MCNEILL, ROSZETTA
PROV NAME: ELLIS, JENNIFER             NOTE TYPE: OPNT
DD: 10/02/2006                         DOS: 10/02/2006
DT: 10/03/2006                         SITE CODE: 15
TRANS CO: ML                           DEPT CODE: 50
Trans init: S70 506633
Supervising Staff Code: 50700
Supervising Staff Name: CHEN, ANDREW

PREOPERATIVE DIAGNOSIS: Left thumb CMC arthritis, left wrist pain.
POSTOPERATIVE DIAGNOSIS: Left thumb CMC arthritis, left wrist pain.

PROCEDURES: Left thumb CMC arthroplasty with ligament reconstruction
and tendon interposition using FCR graft, right EPB to APL tendon
transfer, right first dorsal compartment release.

STAFF SURGEON: Andrew Chen, M.D.
RESIDENT: Jennifer Ellis, M.D.

ANESTHESIA: Supraclavicular block
[    ] Minimal.
DRAINS: None.

INDICATIONS: Ms. McNeill is a 46-year-old woman with a history of
thrombocytopenia who works as a correctional officer and was injured at
work during an attempt to restrain an inmate. The patient's thumbs
were bent backwards and she now complains of bilateral thumb pain, left
worse than right. The patient was diagnosed with CMC osteoarthritis.
She received Kenalog injections bilaterally without improvement and was
treated conservatively with thumb sleeves. Operative repair was
indicated with CMC arthroplasty. The patient was informed of the procedure,
potential alternatives, risks, benefits, and complications including
but not limited to bleeding, infection, death, need for further
operative procedures, inability to relieve her pain, unfavorable scar.
The patient acknowledged understanding and informed consent was
obtained.

PERATIVE PROCEDURE: The patient had a supraclavicular block, placed
in the preoperative area by the anesthesia team, she was then
transported to the operating room and placed on the operating table in
the supine position. All bony prominences were padded. Venodyne boots
were placed. The patient was given IV sedation by the anesthesia team.
An #18 inch tourniquet was place on the left upper arm over a Webril outside
of the operative field and surrounded with a 1000 drape. The left arm
was then prepped and draped in the usual sterile fashion using a
betadine solution. The critical pause was performed using two patient
identifiers to confirm the patient and operative site. The patient's
left arm was then exsanguinated with an Esmarch and a tourniquet was
inflated to 250 mmHg. A 5 cm dorsal left wrist incision was marked
with a skin marker overlying the first extensor compartment. An
incision was made with a #15 blade over the CMC joint to the base of
metacarpal. The skin flaps were raised bilaterally taking care to
preserve the dorsal sensory branch of the radial nerve, which was
identified and protected within the skin flaps. Dissection was carried
down to the level of the extensor retinaculum and a #15 blade was used
to incise the ulnar aspect of this retinaculum exposing the first
dorsal compartment and releasing the APL and EPB tendons. The EPB
tendon was transected at this point to be used later for tendon

815

02-23-'09 16:26  FROM-                                              T-219  P020/030  F-227

Operative Note

Pati.   Name: MCNEILL, ROSZETTA   MRN: 179-31-63-3   Birth Date: 04/14/1980 (47 years)   Sex: Female   Room/Bed:
PCP: Unassigned   PP: Unassigned   HFH Primary Insurance: BLUE CROSS   Current Chart: PIQUETTE STORAGE MEDICAL RECORDS   Prin

transfer.. A self-retaining retractor was then placed for more adequate
e   sure.. Dissection was further carried down to the floor of the
f.. t extensor compartment and the radial artery was identified and
protected throughout this procedure. A small volar crossing branch of
the radial artery was identified and coagulated with bipolar
electrocautery. .The wrist capsule was then incised over
the CMC joint extending over the trapezium. This brought the trapezium
into view with the exposure of the CMC and STT joints. Degenerative
arthritis was noted at the CMC joint. A Joseph elevator was then used
to free the remaining attachments of the trapezium and osteotome and.
mallet were used to make a longitudinal osteotomy in the trapezium in
line with the FCR tendon. Trapezium fragments
were removed with a rongeur and sent to pathology for specimens.
Attention was then turned to the forearm where a 1 cm transverse
incision was made with a #15 blade over the FCR tendon. Scissors were
used to bluntly dissect the tendon free of the surrounding soft tissue
and muscle. The tendon was then sharply divided with a knife. A
Ragnell retractor was then passed distally at the insertion of FCR
tendon at the base of the wrist and traction was gently and slowly
applied to draw the tendon out of the trapezial space. Now the forearm
wound was then covered and a moist sponge placed. An awl was used
to create a path through the cortex of the metacarpal to be used for
ligament reconstruction, entering from the base of the metacarpal and exiting through the dorsal
aspect. This path was widened with curettes. The FCR tendon graft was divided into two pieces
longitudinally. One half was passed through the metacarpal and
then sutured back to itself at the base of the thumb with 3-0 Prolene horizontal
mattress sutures. The remaining FCR tendon was fashioned into an anchovy
a(  )secured with 3-0 Prolene. This was then placed into the
ti.. zial place for a tendon interposition. The tendon anchovy was
sutured to the thumb base metacarpal with 3-0 Prolene sutures. The
w  "C capsule was then reapproximated with 3-0 PDS mattress sutures:
N.  . the previously divided EPB tendon was sutured to the APL tendon in
a side-to-side fashion with interrupted 3-0 Prolene horizontal mattress
sutures. The tourniquet was then deflated. Hemostasis was achieved
with bipolar electrocautery. The wound was irrigated with saline. The skin
was closed with 4-0 Monodryl deep dermal sutures followed by running 4-
0 Monocryl subcuticular skin stitch for both incisions. A dressing was
placed with Steri-Strips, Xeroform, and 4 x 4s. Webril was then
wrapped around the arm and a thumb spica plaster splint was placed and
held in place with an ACE wrap. The patient tolerated the procedure
well. She was awoken up and transferred to the recovery room in stable
condition. Total tourniquet time was 75 minutes. Sponge and
instrument counts were all correct at the end of the case.


I was present for the entire period between opening and closing of the procedure(s).
CHEN, ANDREW

812

02-23-'09 16:26 FROM-                                    T-219 P017/030 F-227

Name: MCNEILL, ROSZETTA  MRN: 179-31-53-9  Birth Date: 04/14/1960 (47 years)  Sex: Female  Room/Bed:
PCP: Unsigned  PP: Unsigned  HPH Primary Insurance: BLUE CROSS    Current Chart: PIQUETTE STORAGE MEDICAL RECORDS  Prir

Report: 11/22/2006 00:00    Received: 12/04/2006 15:51    Revision 1 of 1  Document Status:
    ned
Status: Allied Health Note (documented)
Care Provider: RAMAN, SATISH        Clinic: HF NEW CENTER ONE, OCCUPATIONAL T
Transcribed By: WSP/TRANSDYNE        Updated By: CHEN, ANDREW
Electronically signed by: CHEN, ANDREW,MD (50700) On: 12/04/2006 15:51

Company:      HF Henry Ford      MRN:        17931539
Prov Code:    41733          Pt Name:  McNeill, Rosetta
Prov Name:    Raman, Satish        Note Type: ANC
DD:           11/28/06            Date of Service: 11/22/06
DT:           11/29/06            Site Code: 2Y
Trans Co:     IL              Dept Code: 52
Trans Init: WSP
Supervising Staff Code: 50700
Supervising Staff Name: Chen, Andrew
11282006-D061128041733007.dss

REHABILITATION SERVICES
Plan of Care

Ref. MD: Dr. Andrew Chen.

Primary Dx: CMC arthroplasty plus ligament transposition.

Treatment Dx: CMC degenerative arthritis.

T-9: 715.8.    Onset Date: 10/03/06.

Eval Date: 11/22/06.

In discussion, your patient and I have established and agreed to
the following treatment plan:

ASSESSMENT:
IMPAIRMENTS: Pain at rest in hand ranging at about 8/10. Decreased
range of movement, left wrist flexion is 45 degrees, extension is
55 degrees, radial deviation is 5 degrees, and ulnar deviation is
25 degrees. Thumb MP joint flexion is 35 degrees, IP 40 degrees,
and radial abduction is 45. Strength of wrist extension and
flexion approximately 3+/5 and painful. Thumb strength testing not
possible, ranging about 3/5. Range of motion of the fingers is
within functional limits. Thumb tip from head of fifth metacarpal
is short by approximately 0.25 cm. Swelling present in left dorsum
of hand at base of thumb. Tingling present in radial aspect of
wrist, thumb, and thenar eminence. Has an old right shoulder
injury, which restricts her ability to raise right arm up in end
range of flexion, abduction, and external rotation. Grip testing
deferred in left hand for now.

FUNCTIONAL LIMITATIONS: Patient has difficulty with basic ADLs,
difficulty with using hand for opening cans, tying shoes, managing
coat buttons, and difficulty with meal preparation.

Clinical Impression: Patient is status post CMC arthroplasty with
ligament transposition. Anticipate therapy should help regain hand
function, as it is possible.

Patient has good rehabilitation potential.

Patient has fair knowledge and understanding of her condition and
self-management skills.

GOALS:
S.T.G.:
1. Patient will be independent with preliminary HMP - 1 to 3

Page 1

Requested by: DOWD, DON

# EXHIBIT 5

816

02-23-'09 16:26 FROM-                                           T-219 P021/030 F-227

Patient Name: McNEILL, ROSZETTA   MRN: 179-31-53-9   Birth Date: 04/14/1960 (47 years)   Sex: Female   Room/Bed:
Unassigned   PP: Unassigned ) HFH Primary Insurance: BLUE CROSS   Current Chart: PIQUETTE STORAGE MEDICAL RECORDS   Prin

Report: 05/17/2007 00:00   Received: 05/21/2007 12:02   Revision 1 of 1   Document Status:
Signed
Status: Office Note (documented)
Care Provider: CHEAITO, ALI           Clinic: HF DETROIT CAMPUS CLINIC, PLASTIC
Transcribed By: BFM/TRANSDYNE        Updated By: CHEN, ANDREW
Electronically signed by: CHEN, ANDREW, MD (50700) On: 05/21/2007 12:02

Company:      HF Henry Ford    MRN:          17931539
Prov Code:    21951            Pt Name:     McNeill, Roszetta
Prov Name:    Cheaito, Ali     Note Type: OFNT
DD:           05/17/07          Date of Service: 05/17/07
DT:           05/18/07          Site Code: 15
Trans Co:     IL                Dept Code: 32
Trans Init:   BFM
Supervising Staff Code: 50700
Supervising Staff Name: Chen, Andrew
3043956

This is an office visit.

ENCOUNTER CODE: 716.94

The patient is a 47-year-old female status post left thumb CMC arthroplasty with
ligament reconstruction done in October 2006. She has been following up with
Physical Therapy. She has been doing very well in terms of her hand. She is only
complaining of some pain on extreme abduction of her left thumb. Otherwise, the
wound has healed very nicely. She is now complaining of the aggravation on the
right thumb area. She has got lot of pain when pinching, writing, or counting and
finishing up her work. Of note, she is an accounted in the clerk office at Wayne
nty. She has tried injections back in September, which gave her some relief.
She is not wearing a splint for the right thumb.

Physical examination reveals a healthy female a/o x3, in no acute distress. Examination of the
left hand reveals a wound that is well healed. No erythema or induration on
the radial aspect of the thumb. There is full range of motion with the thumb.
Some point tenderness over the CMC joint. There is some tenderness on extreme
abduction of the thumb. On the right hand, there is extreme tenderness over the
CMC joint on the right thumb area. Positive Finkelstein test.

ASSESSMENT AND PLAN: This is a 47-year-old female status post left thumb CMC
arthroplasty and tendon repair, doing well from that perspective. Patient now has
complaints with right sided symptoms. Options were discussed with her. At this time, in
terms of her arthritis of the right CMC joint we gave her an injection of
cortisone, 3 mL were done on sterile condition. We gave her a scheduling
appointment for arthroplasty and ligament reconstruction on the right thumb, and
that was on October 12, 2007. All questions were answered. The patient was also
given a Comfort Cool splint for the right hand. The patient will return to us in
September for completion of paperwork.

Patient Name: MCNEILL, ROSZETTA

MRN: HF 17931539

Status: Final (version 2 of 2)  Latest: Final

 **Office Note**

Patient Name: MCNEILL, ROSZETTA
DOB/Age/Gender: 04/14/1960  47y  Female
Location: HF,HF Medical Center-Detroit Campus Clinic Plastic Surgery (K-16)

MRN: **HF 17931539**

Document State: **Final (version 2)**
Update Date/Time: **05/21/2007 12:02**

Service Date/Time: 05/17/2007 00:00
Provider: **ALI CHEAITO**
Responsible Staff: ANDREW CHEN MD

| | | | |
|---|---|---|---|
| Company: | HF Henry Ford | MRN: | 17931539 |
| Prov Code: | 21951 | Pt Name: | McNeill, Roszetta |
| Prov Name: | Cheaito, Ali | Note Type: | OFNT |
| DD: | 05/17/07 | Date of Service: | 05/17/07 |
| DT: | 05/18/07 | Site Code: | 15 |
| Trans Co: | IL | Dept Code: | 32 |
| Trans Init: | BFM | | |

Supervising Staff Code: 50700
Supervising Staff Name: Chen, Andrew
3043956

This is an office visit.

ENCOUNTER CODE: 716.94

The patient is a 47-year-old female status post left thumb CMC arthroplasty with ligament reconstruction done in October 2006. She has been following up with Physical Therapy. She has been doing very well in terms of her hand. She is only complaining of some pain on extreme abduction of her left thumb. Otherwise, the wound has healed very nicely. She is now complaining of the aggravation on the right thumb area. She has got lot of pain when pinching, writing, or counting and finishing up her work. Of note, she is an accounted in the clerk office at Wayne County. She has tried injections back in September, which gave her some relief. She is not wearing a splint for the right thumb.

Physical examination reveals a healthy female a/o x3, in no acute distress. Examination of the left hand reveals a wound that is well healed. No erythema or induration on the radial aspect of the thumb. There is full range of motion with the thumb. Some point tenderness over the CMC joint. There is some tenderness on extreme abduction of the thumb. On the right hand, there is extreme tenderness over the CMC joint on the right thumb area. Positive Finkelstein test.

ASSESSMENT AND PLAN: This is a 47-year-old female status post left thumb CMC arthroplasty and tendon repair, doing well from that perspective. Patient now has complaints with right sided symptoms. Options were discussed with her. At this time, in terms of her arthritis of the right CMC joint we gave her an injection of cortisone, 3 mL were done on sterile condition. We gave her a scheduling appointment for arthroplasty and ligament reconstruction on the right thumb, and that was on October 12, 2007. All questions were answered. The patient was also given a Comfort Cool splint for the right hand. The patient will return to us in September for completion of paperwork.

Signed By ANDREW CHEN MD at 05/21/2007 12:02

Patient Name: MCNEILL, ROSZETTA

MRN: HF 17931539

Status: Final (version 2 of 2)  Latest: Final

 **Office Note**

Patient Name: **MCNEILL, ROSZETTA**
DOB/Age/Gender: **04/14/1960 48y Female**
Location: **HF,HF Medical Center-Detroit Campus Clinic Plastic Surgery (K-16)**

MRN: **HF 17931539**

Document State: Final (version 2)
Update Date/Time: 03/24/2009 11:20

Service Date/Time: 03/16/2009 00:00
Provider: ABIGAIL R BRACKNEY MD
Responsible Staff: ANDREW CHEN MD

---

Company: HF Henry Ford
Prov Code: 22723
Prov Name: Brackney, Abigail
DD: 03/16/2009
DT: 03/17/2009
Trans Co: AD
Trans Init: cbt 91052182
SUPERVISING STAFF CODE: 50700
SUPERVISING STAFF NAME: Chen, Andrew M.D.

MRN: 17931539
Pt Name: MCNEILL, ROSZETTA
Note Type: OFNT
Date of Service: 03/16/2009
Site Code: 15
Dept Code: 32

Encounter codes are 716.94, 727.04, and 354.0.

HISTORY OF PRESENT ILLNESS: Ms. McNeill is a 48-year-old female who previously underwent a left thumb CMC arthroplasty with ligament reconstruction and tendon interposition in October of 2006. She was seen in February of '09 for followup of symptoms on the right side consistent with right thumb basilar arthritis and carpal tunnel syndrome. She had an injection, which improved her symptoms at that time. She also had an EMG done in February of '09, which showed moderately severe carpal tunnel on the right side. She has been wearing her splints while at work and she is on work restrictions for no using the cash register, as it is difficult for her to get the money out while wearing her wrist splints. She has not been wearing her splints at night, because she says it's difficult to sleep in them, but her numbness and tingling in her fingers and pain is worse at night. Since the injections at her last visit her pain and the numbness and tingling have improved.

PHYSICAL EXAMINATION:
GENERAL: Patient is alert and oriented x3, in no acute distress, well nourished, well developed.
EXTREMITIES: Left hand: She has a well-healed scar at the base of her thumb. She has full flexion and extension and good strength of her thumb. There is no pain to palpation. On the right side, she has positive Finkelstein's test on the right and pain at the CMC joint. She has numbness and tingling over the ring, middle, and index fingers that is improved, she states, since her last visit. She has good strength in her fingers and full flexion and extension.

ASSESSMENT AND PLAN: Ms. McNeill is a 48-year-old female with status post left thumb CMC arthroplasty and ligament reconstruction with tendon interposition in October of '06. She has a right basilar arthritis and carpal tunnel of the right hand. Scheduling surgery was discussed with the patient; however, she feels she wants to wait until September to have this surgery. Since the injections have helped and she does not feel at this time she wants to not be able to use her right hand, she is to wear the braces at night to help with her symptoms and continue wearing them throughout the day. She is given a work note today for work restrictions at the cash register and she is to follow up in August of this year less than 30 days prior to when she wants to have surgery for paperwork to be completed or sooner if needed for another injection or to possibly schedule surgery sooner.

CBS/cbt-0101103/91052182/03162009
Signed By ANDREW CHEN MD at 03/24/2009 11:20

Patient Name: MCNEILL, ROSZETTA     MRN: HF 17931539     Status: Final (version 2 of 2) Latest: Final

 **Office Note**

Patient Name: **MCNEILL, ROSZETTA**
DOB/Age/Gender: 04/14/1960 49y Female
Location: HF,HF Medical Center-Detroit Campus Clinic Plastic Surgery (K-16)

MRN: **HF 17931539**

Document State: Final (version 2)
Update Date/Time: **05/05/2009 09:05**

Service Date/Time: 05/04/2009 00:00
Provider: **BRIAN LACE MD**
Responsible Staff: **ANDREW CHEN MD**

```
Company:  HF Henry Ford                MRN:  17931539
Prov Code:  23147                      Pt Name:  MCNEILL, ROSZETTA
Prov Name:  Lace, Brian                Note Type:  OFNT
DD:  05/04/2009                        Date of Service:  05/04/2009
DT:  05/05/2009                        Site Code:  15
Trans Co:  AD                          Dept Code:  32
Trans Init:  cbt 91191735
SUPERVISING STAFF CODE:  50700
SUPERVISING STAFF NAME:  Chen, Andrew M.D.
```

ENCOUNTER CODE:  716.94, 727.04, and 354.0

Patient is a 49-year-old female who was last seen in the clinic 3/16/2009. She previously underwent a left thumb CMC arthroplasty with ligament reconstruction and tendon interposition in October of 2006. She has been following in the plastic clinic for basilar arthritis of the right thumb, carpal tunnel syndrome on the right, and possible carpal tunnel syndrome of left arm. Since her previous office visit, she continues to have symptoms bilaterally, worse on the right side. She states that her symptoms consist mainly of numbness and tingling in her fingers as well as pain, which is typically worse at night. She has been using her splint on her right arm, but states that this has been unsuccessful in assisting her with her symptoms. She previously received CMC joint injections in the right thumb on February 2nd of this year.

PHYSICAL EXAMINATION:
GENERAL: Patient is awake, alert, and oriented x3 in no acute distress, and appears to be well nourished at this time.
EXTREMITIES: Left hand: There is a well-healed scar at the base of the left thumb. She has full range of motion in the left wrist and pain in the palmar aspect of the hand with extension of the wrist. She has full range of motion in all of her fingers. On the right side, she has pain at the CMC joint and positive Finkelstein test. She states she has numbness and tingling over the right middle and index fingers that worsens with pulling motions. She has no sensory defects noted in either hand on this examination.

ASSESSMENT: Patient is a 49-year-old female status post left thumb CMC arthroplasty and ligament reconstruction with tendon interposition in October of 2006 with right basilar arthritis and carpal tunnel syndrome on the right hand and possible carpal tunnel of left hand.

PLAN: It was discussed with the patient that she may have not more than 3 steroid injections in each of her joints in 1 calendar year. She is understanding of this and states that she would like to proceed with the second injection to her wrist. In the clinic, she was given combined injections of lidocaine and Celestone to the right carpal tunnel tendon sheath, left carpal tunnel tendon sheath, and right CMC joint. She is asked to return to the clinic in August at which time, she will discuss surgical options for her carpal tunnel syndrome and likely at that time be scheduled for a surgery.

CBS/cbt-0101059/91191735/05042009
**Signed By ANDREW CHEN MD at 05/05/2009 09:05**



# EXHIBIT 6

WAYNE COUNTY CIRCUIT COURT
EASTERN DISTRICT OF MICHIGAN

ROSZETTA MARIE MCNEILL
     **Plaintiff,**

Vs.

WAYNE COUNTY
JUVENILE DETENTION FACILITY
WAYNE COUNTY CLERKS OFFICE
     **Defendants.**

Case No.

06-630450 NI 10/27/2006
JDG:MICHAEL F. SAPALA
MCNEILL ROSZETTA MARIE
vs
WAYNE COUNTY JUVENILE DETENTIO

| | |
|---|---|
| Roszetta Marie McNeill<br>Plaintiff in Pro Per<br>10574 West Outer Drive<br>Detroit, Michigan 48223<br>(313) 535-6429 | Cheryl Yapo (P55682)<br>Corporation Counsel<br>Attorneys for Defendant<br>600 Randolph, Second Floor<br>Detroit, Michigan 48226<br>(313)224-5030 |

## COMPLAINT OF NEGLIGENT (GROSS) AND INJURY

  NOW COMES PLAINTIFF, Roszetta Marie McNeill, Pro Per, having filed a

Complaint of Negligent, request that this honorable Court accept Plaintiff's complaint for

the reason being that the defendant was reckless in the presence or absence of foresight as

to the injurious consequences to the Plaintiff.

  The Defendant's employees and representatives are culpable to serious

recklessness that resulted in gross negligence whereas, the Defendant knowingly exposed

the Plaintiff to risk and/or injury causing irrevocable injury to the Plaintiff.

  There were numerous conferences between the plaintiff and defendants in which

the Plaintiff explained the nature of the injuries and its ramifications and requested but

did not obtain concurrence in the relief.  Instead the Defendant's recklessness is described

as a 'malfeasance' where the defendant knowingly exposed the Plaintiff to the risk of

injury and of being continually injured and/or re-injured, therefore necessary for the Plaintiff to bring this complaint who states as follows:

## JURISDICTIONAL ALLEGATION

1. Plaintiff, Roszetta Marie McNeill, is a Michigan resident and is located at 10574 West Outer drive, Detroit, Michigan 48223.

2. Defendant, Wayne County, is an entity authorized to conduct business in The State of Michigan and is located at 600 Randolph, Detroit, Michigan 48226.

3. Statute of Limitation is said to start running at the time of claim accrues, the first time at which an injury was suffered was October 19, 2003.

4. Tolling of the Statute of Limitations was done when the Plaintiff's filed injury in her Federal case

5. The filing of re-injury in 2005 tolled the statue and/or stopped the statue from running for a period of time.

4. Discovery Rule applies, which also tolls the statute of limitations for the reason being that it wasn't until 2006 that Plaintiff discovered that she was irrevocable injured.

5. It was not reasonably possible for the Plaintiff to discover the cause of the injury to her hands, which caused the plaintiff to have surgery October 2, 2006.

6. It was not reasonably possible for the Plaintiff to discover that the injury that had occurred October 19, 2003 injured the C 4-5 and C 5-6 cervical vertebrae. Said injury caused the plaintiff to have therapy August 10-until

3

date and years of lodicain shots, because the neck injury was mistaken believed to be an re-injury to an existing shoulder injury.  The Plaintiff did not discover, until considerable after the act which caused the injury, that there was effacement of her C4-5 and C5-6 of cervical vertebrae, permanent crepitation of knee { and weakness in the thigh}, and injury to hands {bone removed, ligament rerouted}.  It wasn't until the Plaintiff was under the care of specialists after filing a re-injury with  the Defendant.

7.  August 3, 2006, the Plaintiff suffered additional injury at the reckless, gross negligence of the Defendant when the Plaintiff was again exposed to risk and injury when industrial adhesive was left over the entire floor of the Plaintiff's workstation. causing re-injury to Plaintiff's knee and Lumbar strain.

8.  The Plaintiff did not discover that the cause of 2003 injury was so severe and or occurred until 2006 whereas Plaintiff immediately filed this complain.

9.  The "discovery rule" permits this suit to be filed within a certain period of time after the injury was discovered, or reasonably should have been discovered.  Plaintiff only discovered the permanent injury to her knee October, 2006, patellae syndrome. Plaintiff only discovered injury to hands, October, 2006 after surgery.  Plaintiff only discovered permanent effacement of the, C4-C5 and C5 –C6 cervical vertebrae, October, 2006 when she got under the care of a  specialist.

10.    Res Judicata does not apply for the reason being that Federal District court
case # was amended    2006, omitting any aspect of injury and deals
primarily with the ADA, Civil Rights and Whistleblowers act.  This is the
proper forum for  the instant complaint for the injury sustained at the
Defendants blatant failure to foresee and so allow otherwise avoidable
dangers to manifest.  Under no circumstance do  the Federal District Court
case # have the issue of negligence before it whereas, the issue of
negligence would be litigated to its finale.

### FACTUAL ALLEGATIONS

### Count 1 – Gross Negligent 2003

January 14, 2002 until February 22, 2003 Plaintiff worked full-time as a Juvenile
Detention Specialist.  Plaintiff was on probation for a year, whereas, if the Plaintiff was
injured before the end of the year's probation she would be terminated.

Plaintiff was Lupus (SLE), Thrombocytopenia and fibramyalgia with a known
arm restriction.  (See Exhibit A)

Plaintiff, in lieu of her condition and restriction, had to work in said environment
after the Defendant had illegally terminated Plaintiff from her account clerk position in
violation of ADA, Civil Rights and the whistleblower's act.  Whereas, the Juvenile
Detention Specialist position was the only position available to the Plaintiff at the time,
because of the Defendant refusal to accommodate Plaintiff.

January 14, 2002 until February 22, 2004, Plaintiff worked with arm
restriction in a no restriction facility.

October 19, 2003, Plaintiff was working on the Juvenile Detention Facility female mental health pod, Joe Louis.  Plaintiff was on a one-on-one with a mental health resident that had threatened to kill herself.  On a one-on-one the employee was to observe the juvenile at all times.  The female threatened suicide and was nude.

As Plaintiff sat on the one-on-one JDS Collins and supervisor McChondichi began managing a mental health resident. The mental health resident was passive resistant until JDS Collins and Supervisor McChondichi grabbed her arms.

When the supervisor and the JDS began to manage the resident, the resident immediate began to resist and fight them.  The Plaintiff called a "Code Green" on her walkie Talkie and Master Control reiterated the "Code Green" after pulling up the camera to the pod.   With the JDS and the supervisor on either side of the mental health resident who was clinging to the table, they were trying to drag the resident to her room. The resident was on psychotropic drugs and out of control.  Once they got the resident loose from the table the mental health resident began to fight viciously.

Plaintiff could not leave the one-on-one that was at the door as with most of the other residents, observing the commotion.

The supervisor and the JDS managed the resident into an open empty room.  On the Mental health pod everything is taken out of the room.   The Supervisor made a decision to cut the irate resident's clothes off and called for the Plaintiff to come to the room and replace him.  Plaintiff informed the supervisor that Plaintiff could not leave Plaintiff one-on-one, but she was ordered.  The supervisor demanded that Plaintiff leave the Plaintiff's post.

Both the Plaintiff and Master Control called the "Code Green", repeatedly. A "Code Green Joe Louis" meant all available, females and males, to said position. Reinforcement was on the way to the mental health pod, but the supervisor refused to wait for fortification.

Plaintiff was ordered to leave the one-on-one which was in violation of the policy and put the mental health resident in harm. Furthermore, Plaintiff was ordered to take the male supervisor's position in managing the mental health female resident.

Plaintiff suffered a contusion to her left knee when the weight differentiation between the Plaintiff and the male supervisor cause plaintiff was forcefully forced down on the cement bed as she took hold of the resident and the male supervisor relinquish his grip. The male supervisor weighed over 250lbs, the JDS weighed approximately 180lbs and the resident weighed approximately 180lbs. The Plaintiff weighed only about 135lbs.

Once the male supervisor left and the JDS was unable to cut off the mental health resident's clothing with the safety scissors, the JDS laid the scissors down and tried to rip the uniform of the resident.

Plaintiff suffered damage to her hands, particularly her left hand when in trying not to get assaulted and/or bitten by female mental health resident. The plaintiff's left hand was forced into the cement wall and as the Plaintiff's hands slid down the arm of the resident, the resident was able to forcefully bend the Plaintiff's hand, thumbs backwards. (See Exhibit B)

Plaintiff suffered injury to the C4–5 and C5-6 of the cervical vertebrae when over five Juvenile Detention Specialist jumped on her back to get to the female mental health resident.

After getting injured Plaintiff transferred out of Wayne County Juvenile Detention Facility.

November 5, 2003, Plaintiff requested a 3% medical demotion because Plaintiff had to use a knee brace and hand brace and the facility was a no restriction facility. Furthermore, Plaintiff always feared being injured because of the Thrombocytopenia and could bleed easily because of the deterioration of Plaintiff platelet. (See Exhibit C)

November 14, 2003, Plaintiff requested an accommodation to account clerk in the form of an official ADA, Medical Demotion, and 3% demotion. Wayne took the 3% and refused to process and ADA which would have been a lateral, nor a medical demotion which could not be refused without good cause. Because of Plaintiff fear of being injured again Plaintiff accepted the 3% demotion to remove myself from an injurious situation. The statute of limitation is said to start running at the time of claim accrues, the first time at which an injury was suffered was October 19, 2003. But, tolling of the Statute of Limitations, occurred when the Plaintiff's filing injury in her Federal case which at the time included the issue of negligence and injury. The Federal filing tolled the statue and/or stopped the statue from running for a period of time.

### Count II Gross Negligence Re-injury

February 22, 2004, Plaintiff began working as a Account Clerk for the

Wayne County Clerk's Office, 1025 East Forest, Detroit, Michigan. When Plaintiff was hired there were two account clerks and a cashier. When County forced the cashier to retire, Plaintiff left to do both Account Clerk position and act as cashier.

From August, 2004 until December, 2004, Plaintiff worked both Account Clerk position and the Cashier's position, plus covered for the downtown Account Clerk at Juvenile Detention Facility.

August 2005, because of the re-injury to Plaintiff's shoulder, knee and hands, (See Exhibit D) from performing the numerous duties out of her job duties, the Plaintiff filed a re-injury with Crystal Messer, the Defendant's Accident Fund Insurance Company of America, in Lansing Michigan. Crystal Messer denied the Plaintiff's claim. After the Plaintiff filed re-injury she filed a Worker's Compensation Form with Henry Ford Hospital's Insurance Verification Department so that she could be seen by a specialist at Henry Ford Hospital. (See Exhibit E) The Plaintiff was referred to a specialist that had to perform surgery removing a metacarpal bone and replacing bone with ligament, October 2, 2006 and Plaintiff was informed to find another occupation.

When the Plaintiff filed re-injury the Defendant insurance company denied Plaintiff's claim. Wherefore, tolling would resume in 2005 at the initiation of re-injury claim.

August 10, 2005, the Plaintiff contested the Defendant's continued gross negligent in causing her irreparable injury, loss, or damage, she filed a "temporary restraining order enjoining the Defendant from continually inflicting irreparable injury on her. The court inferred that the court was reluctant to undertake the fact-intensive

assessment…before the parties have engaged in any sort of discovery. The Plaintiff was in turn irreparable injured. (See Exhibit F)

### Count III – Gross Negligent 2006

August 3, 2006, the Defendant negligently left industrial adhesive over the entire floor of the Plaintiff's workstation. At the time the Defendant was with full knowledge of Plaintiff's prescription for 4 weeks of therapy due to Patellae syndrome. (See Exhibit G)

The area Plaintiff worked, at CAYMC, was under construction and the carpet was removed, but the industrial glue remained and the Plaintiff was exposed to risk of injury. Plaintiff's right knee was re-injured with a strain when Plaintiff was glued to the floor. Plaintiff right leg pulled from the knee when she tried to lift her leg, which felt like Plaintiff's knee, was going to separate from the thigh. Feet glue to the floor Plaintiff started falling backwards. The fault lies in the Defendant being willing to run the risk of exposing the Plaintiff to risk of injury, at the Plaintiff's expense. (See Exhibit H)

It is the Defendant's fault that the Plaintiff was injured in its failure to foresee and so allow otherwise avoidable dangers to manifest. In this case the Defendant's failure rose to the level of wilful blindness where the defendant intentionally avoided adverting to the reality of a situation.

### (cont.) Count II1 – Gross Negligent 2003

II. New injury August 3, 2006, Lumbar Strain. . Plaintiff sustained a lumbar strain when Plaintiff was glued to the floor. Plaintiff supervisor was passing and Plaintiff went to turn right. Falling into the partition behind her the Plaintiff was able to twist to

her right and push herself back to her feet. Plaintiff had to stepped out of her shoes to unglued them from the floor. HFH and Wayne County diagnosed Plaintiff with a lumbar strain. (See Exhibit I)

III.     Plaintiff is now, at the filing of this complaint in three therapies, one for her knees, neck and back. Moreover the Plaintiff had to have surgery on her hand . (See Exhibit J) Plaintiff has an injury on Plaintiff lower back, which effects walking, sitting turning, etc.

Until 2006, it was not reasonably possible for the Plaintiff to discover the cause of the injury, or even to know that an injury has occurred to her neck, until considerable after the act, which caused the injury. The "discovery rule" permits this suit to be filed within a certain period of time after the injury is discovered, or reasonably should have been discovered. The post-discovery should permit the late discovery of permanent injury to knee, patellae syndrome. Post-discovered of injury to hands, post-discovered injury to neck which include effacement of C4-C5 and C5 –C6 cervical vertebrae. (See Exhibit K)

Furthermore, Res Judicata is moot, because the only issues in the Federal District court case No. 05-72885 as amended  was ADA, Civil Rights and Whistle blower act, which allowed the  plaintiff to file in  the appropriate jurisdiction,  this forum.

Under no circumstance will the Federal District Court case No. 05-72885 litigate the issue of negligence/injury to its finale.

The recidivism of the Defendant's gross negligent acts are indicative to the Defendant's belief that they can indefinitely and blatantly disregard the safety of its employees. (See Exhibit L)

In the Plaintiff's complaint, there is a plethora of the Defendant's gross negligent and its direct relationship to the injuries suffered by the Plaintiff.

Defendant must be held at the same rigorous standards as that of a reasonable person and the test of reasonableness is directly relevant to the activities undertaken by the defendant. What would a reasonable person have done in the same situations is the abacus in measuring the Defendant's culpability. There is a baseline of minimum competence that all are expected to aspire to. The reasonable person is appropriately informed, capable, aware of the law, and fair-minded.

Plaintiff contends that medical documentation from 2004 until date is evidentiary in supporting the Defendant's gross negligent causing irreparable injury to the Plaintiff.

The degree of the Defendant's culpability is determined by applying a reasonable person standard. The negligence of the Defendant's became "gross" when the Defendant failure to foresee involved a "wanton disregard for human safety.

Negligence would have also arose if the Defendant had not actually foreseen the potentially adverse consequences to the planned actions, and had gone ahead, exposing the Plaintiff to the risk of suffering injury or loss. Which was not the case here, in this case the Defendant had actually foreseen the potentially adverse consequences and safeguarded a particular individual from risk of suffering injury and/or loss, but not the Plaintiff. The Defendant endangered the safety of the Plaintiff in circumstances where the reasonable person would have foreseen the injury and taken preventive measures to safeguard all involved.

## **RELIEF**

**WHEREFORE** the Plaintiff prays that this honorable court *grant* the following relief:

That Defendants to be found to have acted grossly negligent and maximum allowed for said act.

Plaintiff requests that Defendant to be found to have violated numerous acts in multiple instances and penalties should be assessed as treble damages pursuant to gross negligent.

Plaintiff requests that she recovery of compensatory and punitive damages for the intentional negligence. Plaintiff asks that the court grant such further equitable and other relief that may be warranted.

ROSZETTA MARIE MCNEILL

# EXHIBIT 7

STATE OF MICHIGAN
THIRD CIRCUIT COURT



**SUMMONS AND
RETURN OF SERVICE**

CASE NO.

THIS CASE ASSIGNED TO JUDGE: MICHAEL F. SAPALA    Bar Number: 19891

| PLAINTIFF | DEFENDANT |
|---|---|
| iCNEILL ROSZETTA MARIE    PL 01 | VS  WAYNE COUNTY CLERKS OFFICE    DF 003 |

COURT
ADDRESS: 2 WOODWARD AVENUE, DETROIT, MICHIGAN 48226

COURT
TELEPHONE NO. (313) 224-

PLAINTIFF'S ATTORNEY

ROSZETTA MARIE MCNEILL
(P-00999)
10574 WEST OUTER DR
DETROIT, MI 48223
313-535-6429

| CASE FILING FEE | JURY FEE |
|---|---|
| WAIVED | WAIVED |

| ISSUED | THIS SUMMONS EXPIRES | DEPUTY COUNTY CLERK |
|---|---|---|
| 10/27/06 | 01/26/07 | L DAVIS NAQUAY |

*This summons is invalid unless served on or before its expiration date.    Cathy M. Garrett – Wayne County Clerk

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____Court.

The docket number and assigned judge of the civil/domestic relations action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
|  |  |  |

The action ☐ remains ☐ is no longer    pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

10/27/06
Date

Roszetta M. McNeill
Signature of attorney/plaintiff

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**
If you require special accommodations to use the court because of disabilities, please contact the court immediately to make arra

```
CASE:06-630450-NI          ***CASE INQUIRY***          22-FEB-2007 15:49
STATUS: CLOSE
------------------------------------------------------------------------
 1  MCNEILL ROSZETTA MARIE          PL    CLOSE    10574 WEST OUTER DR
                                                   DETROIT    MI 48223
            ATTY:IN PRO PER OR OUT OF STATE
 2  JUVENILE DETENTION FACILI       DF    CLOSE
            ATTY:YAPO CHERYL                       (313) 224/5030
 3  WAYNE COUNTY CLERKS OFFIC       DF    CLOSE
            ATTY:YAPO CHERYL                       (313) 224/5030
 4  COUNTY OF WAYNE                 DF    CLOSE
            ATTY:YAPO CHERYL                       (313) 224/5030
------------------------------------------------------------------------
10/27/06   1 PERSONAL INJURY AUTO NEG                         NAQU102706
            ASSG CRT:MICHAEL F. SAPALA 1701
              TITLE:MCNEILL ROSZETTA MARIE V JUVENILE DETENTION FACILI
10/27/06   2 STATUS CONFERENCE SCHEDULED                      NAQU102706
            NEXT ACT:STATUS CONFERENCE       2/02/07    LOC: SAPAL
10/27/06   3 SERVICE REVIEW SCHEDULED                         NAQU102706
            NEXT ACT:SERVICE REVIEW          1/26/07    LOC: SAPAL
10/27/06   4 CASE FILING FEE - WAIVED        ATTY:IN PRO PER ORNAQU102706
10/27/06   5 JURY DEMAND FILED & FEE WAIVED  ATTY:IN PRO PER ORNAQU102706
10/30/06   6 SERVICE OF COMPLAINT FILED                       ROGE103106
            PTY: 02
            NEXT ACT:ANSWER REVIEW           11/20/06   LOC: SAPAL
10/30/06   7 SERVICE OF COMPLAINT FILED                       ROGE103106
            PTY: 03
11/17/06   8 MOTION FILED               JUDG:SAPALA MICHAEPATT111706
            RESLT:MOTION HEARING SCHEDULED
            NEXT ACT:MISCELLANEOUS MOTION HEAR 1/19/07  ----- LOC: SAPAL
                                         CLRK:PATTERSON CAROL
            REMARKS:DF DISMISS IN LIEU OF ANSWER
11/17/06   9 MOTION TO DISMISS          BY:YAPO CHERYL  MCRA112006
                  AMT:     20.00
            REMARKS:FEE PAID       BRF/F PRF/F NOTE/HRG
11/28/06  10 REPLY TO BRIEF - FILED                           ALLE112906
11/28/06  11 PROOF OF SERVICE - FILED                         ALLE112906
 1/19/07  12 MISCELLANEOUS MOTION HEARING  JUDG:SAPALA MICHAEPATT 11907
            RESLT:TAKEN UNDER ADVISEMENT
            NEXT ACT:TAKEN UNDER ADVISEMENT   1/31/07  ----- LOC: SAPAL
            REPORTER:02345 JOSEPHS RICHARD  CLRK:PATTERSON CAROL
            REMARKS:DF MO DISM IN LIE OF ANSWER
 1/30/07  13 STATUS CONFERENCE          JUDG:SAPALA MICHAEPATT 13007
            RESLT:ADJOURNED
            NEXT ACT:STATUS CONFERENCE        2/09/07  ----- LOC: SAPAL
                                         CLRK:PATTERSON CAROL
 1/30/07  17 STATUS CONFERENCE          JUDG:SAPALA MICHAEPATT 20707
            RESLT:STATUS CONF HELD - SCSO S/F    REASN:TRACK 1 SELECT
                                         CLRK:PATTERSON CAROL
            REMARKS:W/L 4/22, DISC 6/10, CE 7/07, SETCF 42 DAYS
 1/31/07  14 TAKEN UNDER ADVISEMENT     JUDG:SAPALA MICHAEPATT 20107
            RESLT:ADJOURNED
            NEXT ACT:TAKEN UNDER ADVISEMENT   2/08/07  ----- LOC: SAPAL
                                         CLRK:PATTERSON CAROL
            REMARKS:DF MO DISM IN LIEU OF ANSWER
 2/06/07  15 STATUS CONFERENCE                                OPER 20807
            RESLT:CASE SCHEDULED FOR EVALUATION   REASN:TRACK 1 SELECT
            NEXT ACT:CASE EVALUATION          7/10/07  ----- LOC: MTA
 2/06/07  16 STATUS CONFERENCE                                BART 20607
            RESLT:CASE SCHEDULED
```

```
                      NEXT AC  SETTLEMENT CONFERENCE-IC    '21/07  ----- LOC: SAPAL
  2/08/07   18 TAKEN UNDER .  /ISEMENT                  JU   SAPALA MICHAEPATT 20907
                    RESLT:CASE DISMISSED OTF
                      NEXT ACT:INTENT TO DISMISS HEARING 4/09/07  09:00 LOC: SAPAL
                    REPORTER:02345 JOSEPHS RICHARD  CLRK:PATTERSON CAROL
                    REMARKS:DF MO DISM GRT; OPINION PUT ON RECORD, OTBP
  2/13/07   19 PROOF OF SERVICE - FILED                          ALLE 21407
DOCKET/CASE LISTING COMPLETE, THANK YOU ECHOLS_B
```

# EXHIBIT  8

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). Maiden v Rozwood, 461 Mich 109, 119-20; 597 NW2d 817 (1999)(citing Quinto v Cross & Peters Co, 451 Mich 358; 547 NW2d 314 (1996)).

The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion. A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under the court rules. Rozwood, 461 Mich at 121. A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10). The court rule plainly requires the adverse party set forth specific facts at the time of the motion showing a genuine issue for trial. Id. at 120.

Finally, "affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on rules (C)(7) or (C)(10), shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6).

## II.

## PLAINTIFF SUED ENTITIES THAT CANNOT SUE OR BE SUED

Plaintiff's Complaint should be dismissed because Plaintiff sued entities that cannot sue or be sued. In 1981, the electors of Wayne County voted to establish the County of Wayne as a home rule

5

...County. The legislative function of the County was vested in the Board of Commissioners and ...powers were vested with the chief executive officer. The named Defendants, the Wayne ...enile Detention Facility and the Wayne County Clerk's Office have no legislative or ...powers.[2] The Juvenile Detention Facility receives its budget from the Board of ...ers and is administered as a division under the control of the Chief Executive Office. The ...unty Clerk's Office also receives its budget from the Board of Commissioners and is ...ed as a department of Wayne County headed by the elected County Clerk. These ...ns cannot raise their own funds, have no taxing power, nor may they sue in their own name. ...is axiomatic in Michigan law that if an entity is not a legal person, then it may not sue or be ...this principle has long been applied to departments within governmental entities. For example, ...v Marquette Bd of Fire and Water Commrs, 79 Mich 281; 44 NW 608 (1890), plaintiff sued ...of Marquette Board of Fire and Water Commissioners for negligent excavating which was a ...cause of plaintiff's injuries. Defendant defended itself on the ground that it was not a legal ...that it had no taxing power. Judgment for plaintiff was reversed wherein the court stated ...can be no municipal corporation that is not the direct representative of the people of its ...and that "it cannot be true that such an agency can be officially liable to suits for liabilities, ...has no legal means of raising funds for payment." Id. at 284, 286.

...this principle was reiterated in McPherson v Fitzpatrick, 63 Mich App 461; 234 NW2d 566

---

...The Wayne County Code of Ordinances, Title VII, Sections 149-1 and 149-2 provide in pertinent part regarding the ...tention Facility (aka Youth Home), "the county commission hereby ratifies the action of the chief executive officer of ...session of and responsibility for the operation of a child caring institute, more commonly known as the county ... The chief executive officer may appoint the administrator of the county youth home and delegate the day-to-day ...the county youth home to that person and to an appropriate branch and agency of the executive branch." ...Wayne County Charter, Art. IV, Ch. 2, Part III, Sections 4.231 and 4.232 provide in pertinent part regarding the ...hat, "the department of County Clerk is hereby created. The head of the department is the elected County Clerk. ...and duties of the department are those provided by law for county clerks except as provided in Article III. ...ers and duties may be assigned the department by a reorganization plan adopted in accordance with this Charter."

6

# EXHIBIT 8b

2:11-cv-11130-GER-MJH  Doc # 26-2  Filed 02/27/12  Pg 3 of 50  Pg ID 584

**2470**

1                    STATE OF MICHIGAN

2     IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

3

4     ROSZETTA MARIE Mc NEILL,

5                    Plaintiff,

6          -vs-                 Case No. 06-630450-NI

7     COUNTY OF WAYNE, JUVENILE
      DETENTION FACILITY, WAYNE COUNTY
8     CLERKS OFFICE,

9                    Defendants.
      _____/

10

11

12          PROCEEDINGS HAD in the above-entitled cause

13    before the HONORABLE MICHAEL F. SAPALA, Judge, Third

14    Judicial Circuit, Courtroom 1707 CAYMC Building,

15    Detroit, Wayne County, Michigan, on Friday, January 18,

16    2007.

17

18    APPEARANCES:

19               ROSZETTA MARIE Mc NEILL,

20                    Appearing in Pro Se.

21               CHERYL YAPO, Esq.,

22                    On behalf of the Defendants.

23

24

25

RECEIVED 2007 OCT -2 PM 1:12

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

<u>T A B L E   O F   C O N T E N T S</u>

<u>Witness:</u>                                                    <u>Page</u>

^Opinion of the court.............  17

<u>E X H I B I T S</u>

<u>Identification</u>              <u>Marked</u>    <u>Received</u>

(None.)

2

1                                    Detroit, Michigan

2                                    Friday, January 19, 2007

3                    ---        ---        ---

4                    (At 8:52 a.m. matter commences.)

5

6              THE CLERK:  Case number 06-630450-NI, Rosetta

7    Mc Neill versus Wayne County juvenile detention.

8              THE COURT:  All right.  Appearances please.

9              MS. YAPO:  Cheryl Yapo, Assistant Corporation

10   Counsel here on behalf of the defendant.

11             MS. ROSETTA Mc NEILL:  Roszetta Mc Neill the

12   plaintiff, pro se.

13             THE COURT:  All right, I'll proceed with

14   argument here.  I have had an opportunity to read the

15   motion filed by defendant, and I have had a chance to

16   go through your response.  Addressing the plaintiff, it

17   is more than the 20 pages permitted by the court rules

18   and it is also an issue for me about how to deal with a

19   brief that's substantially over that which is allowed

20   when the permission has not been sought to file to

21   extend the length of the brief.

22             I read it.  I am not as deeply concerned as

23   perhaps I was earlier, but I am prepared to hear

24   argument and we will proceed.

25             Ms. Yapo, go ahead.

                                 3

1    MS. YAPO:  I am going to rely on the facts

2    and brief, unless the judge has any questions of me.

3         THE COURT:  What is your view of the injuries

4    suffered and cause of those injuries.  Let's forget

5    about the law for a second.  Okay?  I want to know your

6    view of the injuries suffered and the cause.

7         MS. YAPO:  If they are work related they are

8    covered under comp.  It is the exclusive remedy of the

9    comp statute.  So if there is an on the job injury then

10   the injury should be covered under the Workers'

11   Compensation Disability Act, in which Ms. Mc Neill has

12   filed previously for the injuries that she claims of

13   here and received benefits.

14        THE COURT:  Notwithstanding all of the words

15   that have been submitted by both sides is that what

16   this case is really about from your perspective, really

17   a comp case and therefore her action should be

18   dismissed?

19        MS. YAPO:  It's a comp case as well as you

20   know, if there are any claims that should have been

21   covered, should have been filed in the federal court

22   action, which is still pending by the way.

23        THE COURT:  All right.

24        MS. YAPO:  Not only that she sued entities

25   that cannot be sued.  She sued both the juvenile

4

1     detention facility as well as the Wayne County clerk's

2     office.  I filed a motion to dismiss those for --

3             THE COURT:  But again, get back what were the

4     injuries suffered?

5             MS. YAPO:  My understanding --

6             THE COURT:  The factual cause of the

7     injuries.

8             MS. YAPO:  The factual cause of the injuries

9     I am not sure.  If she is saying that she had an injury

10    because she was working at the juvenile detention

11    facility and was engaged in an altercation with a

12    resident where she had to restrain a resident, that is

13    we compensate that under the act.

14            THE COURT:  All right.

15            MS. YAPO:  If the injury is that she is

16    working, and she is -- repetitive work and receiving

17    carpal tunnel or injuries in that regard, that's

18    covered under comp.  If she is walking along and sees

19    that there is adhesive on the floor where we pulled up

20    the carpet, and she gets stuck and can't move, that's a

21    compensable injury under the Workers' Compensation Act.

22          Those are the 3 injuries that I'm aware of

23    that Ms. Mc Neill is claiming.  And those are all

24    covered under comp.  And in fact we have at least on

25    one occasion given her benefits under the comp act.

1        So that is the nature of the injuries as I

2    understand them.

3        THE COURT: Okay, go ahead and complete your

4    argument it's helpful from your perspective.

5        MS. YAPO: Again my arguments are as I just

6    alluded to, that she sued entities that cannot be sued

7    because they are not legal entities. She has to sue

8    the county and she knows this because she has sued us

9    several times. And that I understand is just a matter

10   of amending the complaint. But in addition to that,

11   the raising of res judicata should preclude this

12   lawsuit here in the state court.

13       One she should have gathered all of these

14   claims that she has, and sent them with her federal

15   court claims, which I attached a copy of the complaint

16   she filed in the federal court, she is claiming pretty

17   much the same facts pattern in supporting her claim in

18   federal court is supporting her claim here in state

19   court.

20       Now, would federal court retain state court

21   jurisdiction over the state claims? I don't know. But

22   she should have gathered all that together and sued us

23   in totality over in federal court.

24       THE COURT: That case is pending, there has

25   been no resolution on the merits on that?

1      MS. YAPO:  That's right.  We had scheduled a

2  hearing for my motion for summary judgment.  Judge

3  Rosen is going to issue an opinion without oral

4  argument.  So, that was a couple of weeks ago he said

5  he was going to do that.

6           To the degree these are viable claims some

7  are barred by the statute of limitations.  This case

8  was filed late '06 October 20th, '06, she claims an

9  injury on October 19th 2003 when she was working at the

10  juvenile detention facility.  There is a 3 year statute

11  on personal injuries, negligence actions, if it even

12  applies.  But those claims are going to be barred by

13  the statute of limitations, there is no tolling, there

14  is no discovery rule violations here.  She has not pled

15  or demonstrated that there are reasons to toll the

16  statute of limitations and she knew about her injuries.

17  She got comp for that injury on October 19th, 2003.

18           And regardless we are entitled to

19  governmental immunity on all the claims of tort like

20  negligence claims, as she claims gross negligence but

21  she hasn't claim anything against an individual, she

22  claimed things against the entity, juvenile detention

23  facility, county clerk's office.  But we're engaged in

24  a government function.  The function is, running our

25  juvenile detention facility, running our clerk's

7

1    office.

2        So, because she doesn't file, she doesn't

3    claim anything that falls within 1 of the exceptions to

4    governmental immunity we are entitled to governmental

5    immunity in that regard.

6        And that pretty much covers all that I have

7    presented in the brief.

8        THE COURT:  Let me here a response.

9        MS. ROSETTA Mc NEILL:  Yes, sir, I would like

10   to say I thank you for hearing me.  I am pro se.

11       The problem that we have here is that the

12   Wayne County juvenile facility owed me a duty.  In

13   accordance to our mission, and our mission statement is

14   to provide a safe facility for pre-adjudicated and post

15   adjudicated juvenile and staff.

16       The procedures as far as managing the

17   juveniles is not adhered to.  I even put that motion in

18   my, in my memorandum to be demoted that it was, it was

19   gross negligence that caused me to get injured.

20       She's right that --

21       THE COURT:  What injury?  I'll ask you the

22   same question as Ms. Yapo.  What injury or injuries did

23   you suffer and what was the cause, the factual actual

24   cause of the injury or injuries.

25       MS. ROSETTA Mc NEILL:  I am a mental health

2:11-cv-11130-GER-MJH   Doc # 26-2   Filed 02/27/12   Pg 11 of 50   Pg ID 592

1    post, sir, I was on the 101 with a suicide individual

2    and my supervisor and another JDS manager mental health

3    resident, when I didn't put my hands on her I called a

4    code green --

5          THE COURT:  Now, now, wait, slow down a

6    little bit so that I can follow you.  Your job, what

7    was your job status there?

8          MS. ROSETTA Mc NEILL:  Juvenile detention

9    specialist, I detain juveniles.

10          THE COURT:  Okay.  Potentially dangerous job.

11          MS. ROSETTA Mc NEILL:  Yes, sir it's a

12    potentially dangerous job but we have gone through

13    training on how to proceed with juveniles and that's

14    what we are called passive resistance.  If they are not

15    hurting themselves, hurting another staff, or hurting

16    us, we are to call a code green to get available staff

17    there before we proceed to manage them

18          THE COURT:  So what happened here?  What lead

19    to your injury?

20          MS. ROSETTA Mc NEILL:  Two individuals

21    managed as juveniles, and we didn't have the

22    appropriate staff my supervisor was a male about 3

23    hundred pounds, when they managed her into a room they

24    went to cut her clothes off, when they cut her clothes

25    off -- to cut her clothes he didn't want to violate her

1    rights so he had to release because he was a male which

2    he made me take her place -- take his place.  We was a

3    weight differentiation, I hadn't built up the

4    management, you know, as much as she had.  When I took

5    hold of her, it was a fight between her -- she and I

6    because the other JDS was trying to cut her clothes off

7    with the safety scissors.  She was trying to bite me,

8    so my hand was sliding down to her arms where I am

9    trying to keep from getting bit and she grabbed both of

10   my thumbs.  She pushed, you know, pulling them back,

11   and I when I come down I come down to the cement slab.

12         We take the mattress off because it is mental

13   health when we put them in a room we put them in a room

14   with nothing.

15         THE COURT:  Slow down.

16         MS. ROSETTA Mc NEILL:  We put them in a room

17   with nothing.  I am injured but I have to hold her.

18   Because like I say again if I let her go I am going to

19   get injured more.  When they finally come in when the

20   code green was called my myself, when maybe 6 or 7

21   other JDS come in, because I am on top of her and there

22   is no other way to get to her they are on top of me.

23   Once I come from under her, you know, I am injured, I

24   go to medical, from there I go to Concentra.  They

25   treated me for the injury.  I didn't know to the extent

1      of the injury I did receive Workers' Comp on there, but

2      I demoted myself because I am lupus and

3      thrombocytopenia.

4              THE COURT:  Lupus and what?

5              MS. ROSETTA Mc NEILL:  I'm lupus and

6      thrombocytopenia and the pace that I was in I didn't

7      know if it was associated with the lupus, because it's

8      where the blood gets into the joints and causes

9      discomfort.  I had been under a doctor and he was

10     giving me braces, and it wasn't until 2006 that I went

11     to a specialist who informed me that the bone was

12     damaged because of the injury, and the bone had to be

13     removed.

14              That's when I filed a re-injury with Wayne

15     County in 2006, January, 2004, I filed a re-injury and

16     was denied.

17              Like she said again --

18              THE COURT:  Now slow down, re-injury.

19              MS. ROSETTA Mc NEILL:  Yes.

20              THE COURT:  Reinjured under the compensation

21     act?

22              MS. ROSETTA Mc NEILL:  I was denied.

23              THE COURT:  Okay.

24              MS. ROSETTA Mc NEILL:  But I was reinjured

25     again from the 2003 injury.  It was exacerbated to the

1    point where the bone had to be removed out of my hand.

2            THE COURT:  How did this happen?

3            MS. ROSETTA Mc NEILL:  Well when I demoted

4    myself down, I went down to the county clerk's position

5    and they had me at 2 positions.  I am informed them

6    working as an accountant clerk and cashier was causing

7    me lot of pain.  They 20 and out the cashier, so, I was

8    forced to do both jobs.  They was trying to get rid me,

9    so they sent me here to Coleman A Young facility where

10   I am doing 8 times the work I had been doing over there

11   at the Lincoln Hall.

12           THE COURT:  Why do you say they were trying

13   to get rid of you?

14           MS. ROSETTA Mc NEILL:  Because I was filing

15   under the ADA that why we have the federal court, the

16   American with disability they were not accommodating me

17   because I was injured, and I was lupus and

18   thrombocytopenia, and they would not accommodate me,

19   and instead they transferred me to a job where I was

20   doing 8 times the work.  I informed them that I was

21   being reinjured --

22           THE COURT:  All right, that is not a claim

23   here, that is a claim in federal court.

24           MS. ROSETTA Mc NEILL:  Yes, this is a claim

25   in federal court but what I was getting to was the

1  point as at the point when I informed them that I was

2  not being accommodated that's when they transferred me

3  here to the Coleman A. Young facility, doing 8 times

4  the work.  About 6 months of doing that, I was -- I

5  went to the emergency because I couldn't use my hand at

6  all.  That's when I was diagnosed with the damage to

7  the carpal bone in my left hand.  I immediately set up

8  for surgery because that was the only way I could

9  continue in my work.

10       And from that point this is where I am now in

11  therapy.  I was injured at the juvenile detention

12  facility because of the gross negligence because there

13  is not enough personnel to assist.

14       They had knowledge of this, when I say gross

15  negligence because 6 months prior, they didn't have

16  enough personnel and another JDS got injured, when she

17  broke her leg.

18       THE COURT:  Slow down.

19       MS. ROSETTA Mc NEILL:  I'm sorry sir.

20       THE COURT:  The reporter has to get this

21  down.

22       MS. ROSETTA Mc NEILL:  I am sorry.  Where

23  another JDS got injured because they did not have

24  enough staff to assist they refused, she refused and

25  they dismissed her and supervisor and the JDS on the

1   mental health pod tried to manage the resident by

2   themselves.  The supervisor and the juvenile fell on

3   the JDS and broke her leg in 3 places.  She was out due

4   to just 6 months prior to me getting injury.  You're

5   right, sir, it's a job where we do get injured in the

6   job if we are not careful if we don't adhere to the

7   proceedings.

8           We are trained, you know, to follow

9   procedures.  If a child is, like we said resisting, I

10  say being passive resistance we are not to put our

11  hands on them.  We are to wait until we have enough

12  staff to manage the child and then on mental health we

13  don't put our hands on them at all.  What we do is call

14  the mental health nurse and the nurse then administer

15  medication and the doctor the mental health doctor

16  makes the call.

17          THE COURT:  All right now.  Couple of

18  questions.

19          MS. ROSETTA Mc NEILL:  Yes, sir.

20          THE COURT:  Which employees, county or

21  detention facility were grossly negligent?

22          MS. ROSETTA Mc NEILL:  It was my immediate

23  supervisor Mr. Maconoshi (sp.), the 1 one that was

24  weighing 300 pounds the one initially managed the

25  juvenile and then demanded --

14

1      THE COURT:  Is his gross negligence alleged

2  in the complaint?

3      MS. ROSETTA Mc NEILL:  Yes, sir, it is

4  alleged in the complaint.  Also was alleged in my

5  memorandum to be demoted.  Once I was injured I gave

6  them 3 percent of my --

7      THE COURT:  Let me interrupt, Ms. Yapo, is he

8  named in the complaint.

9      MS. YAPO:  He is not an individually named

10  defendant.  But he is mentioned in the 4 hundred

11  paragraphs she submitted I am sure.

12      THE COURT:  Okay, but he is not a named

13  defendant.

14      MS. YAPO:  No, he is not a named defendant.

15  No, he is not a named defendant.

16      THE COURT:  The named defendant would be

17  Wayne County juvenile detention facility and Wayne

18  County clerk's office?

19      MS. YAPO:  Yes.

20      THE COURT:  Now, Ms. Yapo takes the position

21  that the juvenile detention facility and the Wayne

22  County clerk's office cannot be named defendants,

23  because of governmental immunity, what is your position

24  on that?

25      MS. ROSETTA Mc NEILL:  That's true, unless

1      there was gloss negligence, sir.  And when there is

2      gross negligence they are, you know, working under the

3      government -- they are not working under the

4      governmental immunity because like I said again that's

5      one of the exceptions, gross negligence.

6                   THE COURT:  That doesn't really answer the

7      question.

8                   Let's at least at this point make this case a

9      little cleaner.  Clearly the detention facility and the

10     clerk's office are to be dismissed at this point.

11     Wayne County remains in as the lone defendant.

12                  MS. YAPO:  I hate to interrupt she has not

13     named Wayne County.

14                  THE COURT:  She does not name Wayne County?

15                  MS. YAPO:  No, she named the facility and the

16     clerk's office.

17                  THE COURT:  All right.

18                  MS. ROSETTA Mc NEILL:  Thought I had named

19     Wayne County.

20                  THE COURT:  Is there a reason you did not

21     name the county?

22                  MS. ROSETTA Mc NEILL:  No, I thought I had.

23     Wayne County -- I did name Wayne County, it says Wayne

24     County juvenile detention facility, Wayne County

25     clerk's office.  Wayne County is the first one.

2:11-cv-11130-GER-MJH   Doc # 26-2   Filed 02/27/12   Pg 19 of 50   Pg ID 600

1              MS. YAPO:   I thought it was Wayne County

2    juvenile detention facility, Wayne County clerks

3    office.

4              MS. ROSETTA Mc NEILL:   No.   No, Wayne County

5    juvenile detention and Wayne County.

6              MS. YAPO:   Do you have her first page.

7              THE COURT:   Yeah do I, I mean I guess you

8    could read it either way.

9              MS. YAPO:   There is no allegation against the

10   county though.   I mean she makes gross negligence

11   claims against the juvenile detention facility and the

12   clerk's office.

13             THE COURT:   I'm going to have to look at this

14   more.   As I said when we started, what's the word I can

15   use, in a cursory fashion, to be frank about it I read

16   your brief which was longer than the court rule

17   permits, I want to read it again, and at this point the

18   case is Rosetta Mc Neill versus Wayne County.

19             And Ms. Yapo may be right and if she is **then**

20   there will be no case here.   But I need to look at it

21   further.

22             Now I should be able to issue a ruling in the

23   beginning sometime next week if not the following week

24   and the 2 of you will be notified.

25             MS. ROSETTA Mc NEILL:   Okay.

1         MS. YAPO:   To reappear or you are going to

2   issue an opinion.

3         THE COURT:   No, because it depends on our

4   docket next week and the following week.   And the

5   changes I will have to look at it again I will be able

6   to get to it within the next 2 weeks.

7         MS. YAPO:   Okay thank you judge.

8         MS. ROSETTA Mc NEILL:   Thank you.

9

10

11

12

13       (At 9:09 a.m. off the record.)

14

15

16

17

18

19

20

21

22

23

24

25

1    R E P O R T E R ' S     C E R T I F I C A T E.

2

3

4    STATE OF MICHIGAN)

5    COUNTY OF WAYNE  )

6

7     I, RICHARD JOSEPHS, RPR, CMRS, CSR-2345, Official

8   Court Reporter in and for the Third Judicial Circuit,

9   Wayne County, State of Michigan, do hereby certify that

10  the foregoing pages 1 through 19, inclusive, was

11  reduced to typewritten form by means of

12  Computer-Assisted Transcription and comprise a true and

13  accurate transcript of the proceedings taken in the

14  above-entitled matter, on Friday, January 18, 2007.

15

16

17

18  _____
Richard Josephs, RPR, CMRS, CRS-2345
Certified Manager of Reporting Services
Registered Professional Reporter

19

20

21

22

23

24

25

# EXHIBIT  9

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT | STATUS CONFERENCE SCHEDULING ORDER ☐ AMENDED ORDER | CASE NO. 6-630450 NI |
|---|---|---|

TITLE: MCNEILL ROSZETTA MARIE v WAYNE COUNTY JUVENILE    FILING DATE: 10/8/06
ASSIGNED JUDGE: MICHAEL F. SAPALA    STATUS CONF. DATE: 2/9/06

NON SERVICE DISP REPL DATE: 1/26/06
1 PL PEND  MCNEILL ROSZETTA MARIE    999 IN PRO PER OR OUT OF    06

2 DF PEND  WAYNE COUNTY JUVENILE  S 10300G

3 DF PEND  WAYNE COUNTY CLERKS OF S 10300G

F I L E D
CATHY M. GARRETT
WAYNE COUNTY CLERK
JAN 3 0 2007  (KP)
BY C. Robinson

---

1. ☐ Service has been obtained and time for filing of the answer has not lapsed. IT IS ORDERED THAT:
   ☐ An adjourned Status Conference is to be held on: _____ (date).
   ☐ **PLAINTIFF IS ORDERED** to notify all parties of this conference, and file proof of service with Clerk of the Court (Room 201 Coleman A. Young Municipal Center).
   ☒ The Court has established the schedule of events noted below and **PLAINTIFF IS ORDERED** to serve a copy of this Scheduling Order on all parties and file proof of service with the Clerk of the Court.

2. ☐ Service has been obtained, time for filing an answer has lapsed and no answer has been filed by Defendant _____ _____. Default shall be filed and served, and motion for entry of default judgment shall be filed and heard no later than _____ .

3. ☒ The following schedule of events is ordered:

| Please check ( ✓ ) Track Selection | ☒ Track #1 | ☐ Track #2 | ☐ Track #3 | ☐ Other |
|---|---|---|---|---|
| Witness Exchange Filing | 6/18/07 | 7/08/07 | 10/07/07 | |
| Discovery Cutoff | 6/10/07 | 9/09/07 | 12/09/07 | |
| Case Evaluation Month | 7/07 | 10/07 | 1/08 | |
| Settlement Conference (Case Evaluation date Plus 42 days) | 42 DAYS | 42 DAYS | 42 DAYS | |
| Other Conference | | | | |

Comments _____
_____
_____

☐ ARISING OUT OF CASE # _____
Please check ( ✓ ) if special case evaluation panel is applicable:
☐ COMMERCIAL PANEL          ☐ EMPLOYMENT/DISCRIMINATION PANEL

**NOTE:** The specific trial attorneys, parties, lienholders and insurance representatives or other persons with authority to make a final decision as to settlement are required to appear at the Settlement Conference, unless excused by the assigned judge.

**NOTICE:** This constitutes a duly entered Order of the Court, and failure to comply strictly with all its terms, may result in sanctions.

MAILED

| Attorney for Plaintiff | Bar No. | Attorney for Defendant | Bar No. |
|---|---|---|---|
| Attorney for Plaintiff | Bar No. | Attorney for Defendant  Angela | Bar No. 1/30/0 |

# EXHIBIT  10

## STATE OF MICHIGAN
### IN THE THIRD JUDICIAL CIRCUIT COURT (WAYNE COUNTY)

ROSZETTA MARIE MCNEILL,

                Plaintiff,

v

WAYNE COUNTY JUVENILE
DETENTION FACILITY,
WAYNE COUNTY CLERKS OFFICE,

                Defendants.

06-630450-NI   10/27/2006
JDG: MICHAEL F. SAPALA
MCNEILL ROSZETTA MARIE
vs
WAYNE COUNTY JUVENILE DETENTIO

---

### Order and Judgment Granting Motion and Dismissing Case

At a session of said Court on this

MAR 0 6 2007

ISIDORE B. TORRES
Wayne County Circuit Judge

The motion of Wayne County to Dismiss in Lieu of Answer to Complaint having come up for hearing before the Court on Friday, January 19, 2007, and the Court having considered the motion, taken it under advisement, then subsequently dictated its ruling into the Court record on Thursday, February 8, 2007;

NOW THEREFORE:

IT IS ORDERED that Wayne County's Motion to Dismiss filed in Lieu of Answer to Complaint is GRANTED for the reasons dictated by the Court into the record on February 8, 2007, and that all of the Plaintiff's claims in this case are hereby DISMISSED WITH PREJUDICE and without costs.

This order and judgment disposes of the last pending claim and closes the case pursuant to MCR 2.602(A)(3).

ISIDORE B. TORRES
WAYNE COUNTY CIRCUIT JUDGE

Alternate Acting For
HON. MICHAEL F. SAPALA

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK
BY C. Patterson

# EXHIBIT 11

10/16/06   MON 10:53 FAX 313 876 1165   HFH PLASTIC SURG   Oct-16-2006 10:

Work/School Letter

Patient Name: MCNEILL, ROSZETTA   MRN: 179-31-53-9   Birth Date: 04/14/1960 (46 years)   Sex: Female   Room/Bed:
PCP: Unassigned   PP: Unassigned   HFH Primary Insurance: BLUE CROSS
Current Chart: PIQUETTE STORAGE MEDICAL RECORDS   Prir

Report: 10/16/2006 10:36   Received: 10/16/2006 10:41   Original Document  Document Status:
Preliminary
This is a preliminary note; it has not been reviewed by the senior staff physician. If there are
questions concerning this note, the senior staff physician should be contacted.

## HENRY FORD MEDICAL CENTERS

LETTER DATE: 10/16/2006

### RETURN TO WORK/SCHOOL LETTER

PATIENT: MCNEILL, ROSZETTA

To Whom It May Concern:

Roszetta Mcneill was examined and treated in our clinic on 10/16/2006.

I am recommending the following based on the patient's condition:

[x]   No work at all from __10/02/2006__ to __10/16/2006__

Patient had surgery scheduled 10/02/06  came back for post op appt on 10/16/2006 for evaluation.
Patient may now return to work as of 10/17/2006 with one handed work restriction.  Patient must
wear splint on left hand at all times while at work. Patient will return in two weeks for
another evaluation.  (Please note change in orginial time off with no work)

Sincerely,


Dr Andrew Chen / jrk

LETTER DATE: 04/22/2008

RETURN TO WORK/SCHOOL LETTER

PATIENT: MCNEILL, ROSZETTA

To It May Concern:

Ms. Mcneill was examined and has been treating in our clinic since 9/13/06.

I am recommending the following based on the patient's condition:

She presented to us wearing bilateral rigid splints provided from Dr Feldman on 6/5/05.

First visit with Dr Chen was on 9/13/06 at this time we replaced her rigid bilateral splints with the same.  Surgery was performed on 10/2/06 right hand she was placed in a plaster cast. Occupational therapy was started as of 10/30/06 and Ms McNeil was placed in soft removable splints in her course of therapy ending 12/06.  Currently she is wearing soft removable splints to

Ms McNeil received kenalog injections 9/13/06,5/17/07,7/19/07,4/14/08.

Sincerely,

*[signature]*

D Chen/cam

# EXHIBIT  12

*176*

Rozetta McNeill 2 Roszetta McNeill's duty changed Doc # 26-4   Filed 02/27/12   Pg 7 of 11   Pg ID 608

**From:**      Abubakar POWELL
**To:**        Debra_Gibson
**Date:**      5/16/2007 10:50:29 AM
**Subject:**   Roszetta McNeill's duty changed

On June 4, 2007, Roszetta McNeill duties will change.  Here are the revised list of duties.

**CC:**        Jgreiss@co.wayne.mi.us;  Kimberley Martin;  Rozetta McNeill

# EXHIBIT  13

2:11-cv-11130-GER-MJH   Doc # 26-4   Filed 02/27/12   Pg 9 of 11   Pg ID 690

*192*

# WAYNE COUNTY CLERK'S OFFICE FISCAL UNIT

## S C H E D U L E   O F   D U T I E S

### POSITION: ACCOUNT CLERK, ROSZETTA MCNEILL

**HOURS:**  8:00AM  -  4:30PM

**BREAKS:**  10:00AM  -  10:15AM
                    3:00PM  -  3:15PM

**LUNCH:**  12:00PM  -  1:00PM

# ASSIGNED DUTIES

- Recount Evening Money & Prepare Daily Deposit
- Prepare ALL deposits (Bonds, Escrow, Interest Bearing, Judicial Sales, Soil Erosion, Prisoner Partial Payments, Candidate Filing Fees, Late Candidate Filing Fees, Campaign Finance, Garnishments)
- Set up new accounts in JDE & Access & Locate and file any necessary back-up documentation for ALL of the above Accounts
- Process redeemed Bad-checks (Deposit Only)
- Get the mail for the Office and Distribute to appropriate person
- Relieve on Cash Register for breaks:  10:15AM & 3:15pm  Shana Creech, at Lunch time: 1:00pm on the Courtside.
- Any other duties that may be assigned

SCHEDULE ASSIGNED:_____   _____
                                          DATE                    SIGNATURE

# EXHIBIT  14

# WAYNE COUNTY CLERK'S OFFICE FISCAL UNIT

## SCHEDULE OF DUTIES

### POSITION: ACCOUNTANT, AMANDA LEE

**HOURS:**     8:30AM  -  5:00PM

**BREAKS:**    10:30AM  -  10:45AM
           3:00PM   -  3:15PM

**LUNCH:**     1:00PM   -  2:00PM

## ASSIGNED DUTIES

- Record all deposits in Access (bank receipts)
- Prepare vouchers for all disbursements, refunds and change of venue
- Prepare refunds using Bottom Line
- Prepare disbursements using Imprest Account
- Prepare initial JDE entry for NSF checks; set up in Access and send letters
- Banking at Chase (including change box)
- Reconcile Daily Inventory
- Verify and Receipt Recorder's Court
- Deliver and Pick-up Vouchers, Checks, Journal Vouchers, and other reports to Accounts Payable
- Post Interest to Interest Bearing and Soil Erosion Accounts in Access and JD Edwards
- Prepare interest adjustments when actual interest posted by WCTO
- Maintain Vital Check monthly stats
- Election recount – Disbursements
- Relieve on the Cash Register for breaks: 10:00am & 3:00PM and 12:00pm in the Cage
- Any other duties that may be assigned

SCHEDULE ASSIGNED: _____    _____
                          DATE                    SIGNATURE

# EXHIBIT 15

# WAYNE COUNTY CLERK'S OFFICE FISCAL UNIT

## S C H E D U L E   O F   D U T I E S

### POSITION: ACCOUNT CLERK, ROSZETTA MCNEILL

**HOURS:**      8:00AM  -  4:30PM

**BREAKS:**     10:00AM  -  10:15AM
                3:00PM  -  3:15PM

**LUNCH:**      12:00PM  -  1:00PM

## ASSIGNED DUTIES

- Prepare ALL deposits (Bonds, Escrow, Interest Bearing, Judicial Sales, Soil Erosion, Prisoner Partial Payments, Candidate Filing Fees, Late Candidate Filing Fees, Campaign Finance, Garnishments) _30%_ 12 hrs.  2 hr 40 min
- Set up new accounts in JDE & Access & Locate and file any necessary back-up documentation for ALL of the above Accounts _10%_ 4 hrs.  80 min
- Process redeemed Bad-checks (Deposit Only) _5%_ 2 hrs.  40 min
- Get the mail for the Office and Distribute to appropriate person _2.5%_ 1 hr.  20 min
- Reconcile daily inventory _35%_ 14 hrs (Please note reconciling daily inventory is done by comparing 2 reports looking for differences amongst them)  2 hr 80 min
- Related duties that may be assigned _2.5%_ 1 hr.  20 min
- Prepare initial JDE entry for NSF checks; set up in Access and send letters _15%_ 6 hrs.  1 hr 20 min

SCHEDULE ASSIGNED: _____    _____

                        DATE                  SIGNATURE

# EXHIBIT 16

Re: Rose McNeil

Director, Employment Programs
Department of Personnel/Human Resourecs
(313) 224-0972

>>> Debra Gibson 5/18/2007 3:27 PM >>>
Hello again,

I sent the percentages a few minutes ago. As for preparing the daily deposits, this consists of counting the money and filling out a form (deposit slip) by hand.

As for the JDE entries, it is all done on the computer.

Hope this helps. Thanks again.

Debra C. Gibson
Personnel Officer
Office of the Wayne County Clerk, Cathy M. Garrett
Ph: (313) 224-0242
Fax: (313) 224-5364

>>> Carrie Skronek 05/18/07 12:20 PM >>>
Thanks for the faxes, just a couple more questions.

I also need is a break down of what percentage of time she will be required to perform each duty during a 40 hour week. If it is easier to breakdown by day that would be fine too.

Can you also provide additional info as to what is required to "Prepare all deposits". Is this done on the computer, by hand, does it require looking info up in files or in the computer, etc.

Seems curious to me that she can still set-up new accounts in JD Edwards. If she is ok to set-up in JDE, I don't see how she can't prepare the intial entry. Is she required to use different equipment?

If she can use a computer to perform one task she can use it to perform any task, what I need clarification on is if any of the new duties requires use of equipment that she is not currently using.

Carrie Skronek
Director, Employment Programs
Department of Personnel/Human Resourecs
(313) 224-0972

>>> Debra Gibson 5/18/2007 11:38 AM >>>
Just faxed over the old job descript. I am also faxing over the medical statement she provided yesterday. Thanks.

Debra C. Gibson
Personnel Officer
Office of the Wayne County Clerk, Cathy M. Garrett
Ph: (313) 224-0242
Fax: (313) 224-5364


CC:                Blair, Deborah;  Culver, Veverly;  Dunn, David;  Johnson, Barbara;  Johnson, Johnnie;
Pitt, Kimberley;  POWELL, Abubakar;  West, Caven

# EXHIBIT 17





# Office of the County Clerk

**Cathy M. Garrett**
*Wayne County Clerk*

TO:        ROSZETTA MCNEIL

FROM:    DEBRA GIBSON, PERSONNEL OFFICER

RE:        JOB ASSIGNMENT

DATE:    February 20, 2007

The purpose of this correspondence is to insure an understanding of your job duties as that of an Account Clerk while you have medical restrictions in place.

We are in receipt of your medical statement dated February , 2007. It states that you are not to use the Cash Register. One of your duties as an Account Clerk call for the use of the Cash Register on a limited basis to provide break and lunch time relief to the Cashiers.

As this task does not represent the majority of your duties as an Account Clerk, we can still allow you to work without performing this particular task. Attached is a Position Description which lists the duties of an Account Clerk. These tasks represent what you will be responsible on a regular basis in your present classification as an Account Clerk. Please note that the Relief of Cashiers on the Cash Registers is omitted.

We hope this information is helpful in insuring an understanding of your responsibilities as an Account Clerk while you have medical restrictions in place. Thank you for your cooperation.

Cc:    Caven West
       Johnnie M. Johnson
       Abubakar Powell
       file

# EXHIBIT 18

Re: Rose McN

**From:**      Debra Gibson
**To:**        Skronek, Carrie
**Date:**      5/18/2007 4:36:23 PM
**Subject:**   Re: Rose McNeil

Good Afternoon, Carrie

I ATTEMPTED to meet with Ms. McNeil just a few minutes ago, to advise her that due to her restrictions, she would not be able to work, as they comprised most of her duties.  Present were Ms. Gibson, her manager, Mr. Powell, her union steward, Veverly Culver and myself.

She refused to meet with us.  Therefore, her union steward notified her that she would not be able to come to work until her restrictions were lifted.

She does have an intermittent leave in place until 6/7/07.Hopefully we can get a resolution of some type soon.  Again, thanks for your help.

Debra C. Gibson
Personnel Officer
Office of the Wayne County Clerk, Cathy M. Garrett
  (313) 224-0242
  (313) 224-5364

>>> Carrie Skronek 05/18/07 4:07 PM >>>
Based on this documentation, I don't see any reason why Ms. McNeil cannot perform the 2 new duties.  I would recommend allowing her to work with those restrictions.

I would suggest meeting with Ms. McNeil.

Go through her old job duties and ask her to confirm which of the duties she can or cannot perform today.  My guess is that she will say that she can perform all of them as she was able to up until this point (except for the register work which you were already working around)

Go over new job duties, confirm those that are on the list of old duties.  Discuss two new job duties (reconciling and preparing initial JD Edwards entries).  Explain that reconciling is simply comparing two reports and requires no new/different equipment or physical demands.  Also explain that the new JD Edwards entries is the same physical requirement as what she is already required to do.

Point out that there are no new physical demands or any new requirements that her need for surgery in the near future may impact on.  Also reiterate that the department cannot work around her restrictions and she is expected to perform the new job duties that are clearly consistent with the job duties outlined in the announcement.

Have they provide additional documentation as to her *physical limitations*  not her inability to perform the job duties (can't use keyboard etc)

If she cannot now perform her old duties then I guess you should be prepared to hand her leave papers as you will be unable to work around her job restrictions as they make up  60% of her job

Please call me, let me know if you need anything.

# EXHIBIT  19

**203**

From:      Veverly Culver
To:        Seimon Gordon
Dated:     May 21, 2007
Subject:   Rose McNeil restrictions


Friday, May 21, 2007, about 4:00 p.m. Debra Gibson called me to meet her
in the conference romm 4:15 p.m. briefly about a medical restriction.
She called again to meet at 4:10. When I enter the front office Rozetta
McNeill was in there standing, so I asked her if she was going to the
meeting and she said not without Seimon Gordon, the Union President (AFSME)
and her attorney (Rozetta had told me this early Friday morning). I told
Debra Gibson, Johnnie Johnson and Abubakar Powell the Supervisor that
Rozetta will not be attending the meeting without her Union President
Seimon and her attorney. Debra explain what the meeting was about adding
2 extra duties to Rozetta job, which she has restrictions on. And, they
said they were not transferring Rozetta with those restrictions. Management
are transferring Mariam a Senior Accountant, so they want Amanda a Accountant
and Rozetta a Account Clerk split her duties. While Robert a Account Clerk
do a cashier duties. Rozetta said she wasn't doing those extra duties.
Johnnie and Debra asked me to let Rozetta know that she cannot return back
to work without have her restriction lifted from her doctor. I asked them
if they were firing Rozetta and they said no. Probably she go on medical
until after surgery in October. So, Rozetta told me to asked them for
something in writing, I did and Debra refuse. Johnnie said, if she come
in without her restriction lifted she be escorted out. I told Rozetta
to contact Seimon to inform her about the meeting and I will do the same.
I called Debra called Debra totell her I informed Rozetta and she wants
everything in writing. So Debra said she will email me in writing but
not Rozetta. Monday morning it was a statement from Debra Gibson email
to me about Friday meeting. I called Seimon to read the statement and
faxed it to her.



cc: Rosetta McNeil

# EXHIBIT  20

Arbitration
April 23, 2008

109

1   A.   No.

2   Q.   Okay.  So describe the operations of the

3   cash office in the Coleman A. Young Municipal Center.

4   What goes on there?

5   A.   **We rang up -- we accepted payments for vital**

6   **records such as birth certificates, death certificates,**

7   **marriages, marriage licenses, certifications.  We have**

8   **court.  We process court payments as well, civil**

9   **actions, divorce cases.  We take in -- also, we process**

10  **escrow payments, prisoner payments.**

11  Q.   Okay.  So in particular, how many people are

12  working in the -- or worked in the cash office at the

13  Coleman A. Young Municipal Center during the time which

14  the grievant was employed there?

15  A.   **About eight people altogether.**

16  Q.   Okay.  Eight people altogether.  How many

17  account clerks?

18  A.   **One.**

19  Q.   And that was Roszetta McNeill?

20  A.   **Yes, one.**

21  Q.   That was Roszetta McNeill?

22  A.   **Yes.**

23  Q.   And who were the other seven people?

24  A.   **We had an account clerk, one accountant, one**

25  **senior accountant and we have me.**

Hanson Renaissance Court Reporting  & Video
(313) 567-8100 www.hansonreporting.com

Arbitration
April 23, 2008

113

1    A.    Yes.

2    Q.    And one senior accountant?

3    A.    Yes.

4    Q.    And then yourself?

5    A.    Yes.

6    Q.    You're the manager one, department manager

7    one?

8    A.    Yes.

9    Q.    And how many cashiers did you say there was?

10   A.    About three at the time.

11   Q.    Three cashiers?

12   A.    Yeah, three if I recall at that time.

13   Q.    You said there were eight employees?

14   A.    Yeah.

15   Q.    That came up to seven.

16   A.    Okay.

17   Q.    Now, how many of the cashiers were actually

18   titled as an account clerk?

19   A.    At that time, there weren't any.

20   Q.    They were all titled as cashiers?

21   A.    Yeah, they were titled as cashiers.

22   Q.    How many account clerks are there now?

23   A.    I'm not exactly sure.  Over at CAYMC?

24   Q.    Yes.

25   A.    I'm not sure.  I think just one.

# EXHIBIT 21

# WAYNE COUNTY CLERK'S OFFICE FISCAL UNIT

## S C H E D U L E   O F   D U T I E S

### POSITION: ACCOUNT CLERK, ROSZETTA MCNEILL

**HOURS:**      8:00AM  -  4:30PM

**BREAKS:**     10:00AM  -  10:15AM
                3:00PM   -   3:15PM

**LUNCH:**      12:00PM  -  1:00PM

## ASSIGNED DUTIES

- Recount Evening Money & Prepare Daily Deposit
- Prepare ALL deposits (Bonds, Escrow, Interest Bearing, Judicial Sales, Soil Erosion, Prisoner Partial Payments, Candidate Filing Fees, Late Candidate Filing Fees, Campaign Finance, Garnishments)
- Set up new accounts in JDE & Access & Locate and file any necessary back-up documentation for ALL of the above Accounts
- Process redeemed Bad-checks (Deposit Only)
- Get the mail for the Office and Distribute to appropriate person
- Relieve on Cash Register for breaks:  10:15AM & 3:15pm  Shana Creech, at Lunch time: 1:00pm on the Courtside.
- Any other duties that may be assigned

SCHEDULE ASSIGNED:_____     _____
                            DATE              SIGNATURE

214

# WAYNE COUNTY CLERK'S OFFICE FISCAL UNIT

## S C H E D U L E   O F   D U T I E S

### POSITION: ACCOUNT CLERK, JOHN STEVENSON

**HOURS:**       8:00AM  -  4:30PM

**BREAKS:**     10:00AM  -  10:15AM
                      3:00PM  -  3:15PM

**LUNCH:**      12:00PM  -  1:00PM

## ASSIGNED DUTIES

- Recount Evening Money & Prepare Daily Deposit
- Prepare ALL deposits (Bonds, Escrow, Interest Bearing, Judicial Sales, Soil Erosion, Prisoner Partial Payments, Candidate Filing Fees, Late Candidate Filing Fees, Campaign Finance, Garnishments)
- Set up new accounts in JDE & Access & Locate and file any necessary back-up documentation for ALL of the above Accounts
- Process redeemed Bad-checks (Deposit Only)
- Get the mail for the Office and Distribute to appropriate person
- Relieve on Cash Register for breaks:  10:15AM & 3:15pm  Shana Creech, at Lunch time: 1:00pm on the Courtside.
- Any other duties that may be assigned

SCHEDULE ASSIGNED:_____  _____
                              DATE            SIGNATURE



## WAYNE COUNTY CLERK'S OFFICE FISCAL UNIT

## S C H E D U L E   O F   D U T I E S

### POSITION: ACCOUNT CLERK,  BOB BIRCH

**HOURS:**        8:00AM  -  4:30PM

**BREAKS:**      10:00AM  -  10:15AM
                       3:00PM   -   3:15PM

**LUNCH:**       12:00PM  -  1:00PM

## ASSIGNED DUTIES

- Recount Evening Money & Prepare Daily Deposit
- Prepare ALL deposits (Bonds, Escrow, Interest Bearing, Judicial Sales, Soil Erosion, Prisoner Partial Payments, Candidate Filing Fees, Late Candidate Filing Fees, Campaign Finance, Garnishments)
- Set up new accounts in JDE & Access & Locate and file any necessary back-up documentation for ALL of the above Accounts
- Process redeemed Bad-checks (Deposit Only)
- Get the mail for the Office and Distribute to appropriate person
- Relieve on Cash Register for breaks:  10:15AM & 3:15pm  Shana Creech, at Lunch time: 1:00pm on the Courtside.
- Any other duties that may be assigned

SCHEDULE ASSIGNED:_____     _____
                                           DATE                       SIGNATURE

# EXHIBIT 22

Henry Ford Health System                    CarePlus                         Jun-19-200 **206**

Patient Name: MCNEILL, ROSZETTA   MRN: 179-31-53-9   Birth Date: 04/14/1960 (47 years)   Sex: Female   Room/Bed:
CP: Unassigned   PP: Unassigned   HFH Primary Insurance: BLUE CROSS          Current Chart: PIQUETTE STORAGE  MEDICAL RECORDS   Pri

Report: 05/22/2007 00:00      Received: 05/22/2007 14:23      Original Document   Document Status:
ned

tronically signed by: CHEN, ANDREW,MD (50700) On: 05/22/2007 14:23



# HENRY FORD MEDICAL CENTERS

LETTER DATE: 05/22/2007

## RETURN TO WORK/SCHOOL LETTER

PATIENT: MCNEILL, ROSZETTA

To Whom It May Concern:

Roszetta Mcneill telephoned the office today for a updated work letter.

[x] may perform all previous duties listed. No additional duties can be added.  Effective until
surgery in October.

Sincerely,

Dr A Chen/lam

# EXHIBIT 23